IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CAMERON R. FELTS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-00297 |
| | ) | |
| VOLVO GROUP NORTH AMERICA, LLC, | ) ) | By: Elizabeth K. Dillon United States District Judge |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION**

Pending before the court are cross-motions for summary judgment. In the complaint, plaintiff Cameron Felts claims that defendant Volvo Group North America, LLC (Volvo) interfered with his substantive rights under the Family and Medical Leave Act (FMLA) and retaliated against him for exercising his FMLA rights. Felts seeks summary judgment in his favor as to all three counts in his complaint. Volvo also seeks summary judgment in its favor as to all three counts. The motions have been fully briefed and argued before the court.

As discussed in more detail below, the court will deny both parties' motions for summary judgment as to the interference claim in Count One and the retaliation claim in Count Two, and it will grant summary judgment in Volvo's favor as to the retaliation claim in Count Three.

I. FACTUAL BACKGROUND

**A. Felts Begins Working as a Welder for Volvo.**

Felts began working as a welder for Volvo on a full time, hourly-wage basis in February 2012. As a Volvo employee, Felts was required to abide by the attendance policy set forth in the collective bargaining agreement between Volvo's New River Valley plant, the International UAW, and UAW Local 2069. The attendance policy sets out a progressive discipline system

based upon an employee's "chargeable" hours of absences that are not covered under the FMLA. The policy provides that chargeable absence hours are removed from an employee's record twelve months from the date of the absence. (Elswick Decl. 3, Dkt. No. 24-3.)

The attendance policy includes a disciplinary system called the Chronic Attendance Program (CAP), which seeks to correct chronic absenteeism. (CAP Ltr. 1, Dkt. No. 1-1.) The policy addresses employees with "[o]verall attendance records that may show a pattern of abuse such as . . . excessive tardy or leave early pattern[s]." (CAP, Ex. A at 1, Dkt. No. 24-3.) It does not set out a minimum number of unexcused absence hours in order for an employee to be placed on CAP. While some HR representatives at Volvo have stated that they personally do not place employees on CAP with 44 hours or less of unexcused absences (Lilly Decl. 4, Dkt. No. 24-4; Shiffner Decl. 5, Dkt. No. 24-5), others have placed employees on CAP with as few as 32 hours (Elswick Decl. 4). Once an employee is placed on CAP, a number of conditions apply to the employee's next six months of active employment, including the following mandate: "You cannot miss any times from work. This includes full-day absences, late entries, and early exits . . . . If you are deemed to be out of compliance with the conditions of this Program, you will be terminated immediately." (CAP Ltr. 1.)

As a Volvo employee, Felts was also required to abide by the New River Valley Plant Shop Rules. In particular, Shop Rule 29 provides that "[t]he following violation[ . . .] may warrant the immediate termination of any employee[:] Falsification of time or records or misrepresenting yourself with information provided to the Company." (Shop Rules 2, Dkt. No. 24-3.)

**B. Volvo Approves Felts's Request for FMLA Leave From March 1, 2014, to March 1, 2015.**

In 2013, Felts applied for and received intermittent leave rights under the FMLA due to a serious medical condition of anxiety and panic attacks.[1] Felts's treating physician, Dr. Clifford Nottingham, certified that Felts would require intermittent FMLA leave to manage this condition and estimated the frequency of leave as up to two days per week and one day per occurrence. (Certification 3, Dkt. No. 22-3.) In 2014, Felts provided Volvo with re-certification as to the same frequency of absences, and Volvo approved Felts's request for FMLA leave for the period from March 1, 2014, to March 1, 2015. (Dillon Decl. 2, Dkt. No. 24-8; Pl.'s Dep Tr. 93:16–95:10, Dkt. No. 24-1.)

**C. Felts's FMLA Leave Expires.**

Felts was aware that he needed to recertify for FMLA leave in March 2015 and that the medical recertification had to be submitted to Volvo within 15 days of any FMLA leave. (Pl.'s Dep. Tr. 103:14–104: 6.) Felts did not meet with Dr. Nottingham until March 19, however,[2] and Volvo did not receive the recertification until March 22. (Pl.'s Br. 3, Dkt. No. 22; Def.'s Br. 4, Dkt. No. 24.) After receiving it, Volvo granted the recertification and approved Felts's FMLA leave for the period from March 16, 2015, to March 16, 2016. The parties dispute whether, within five days of his request for FMLA leave, Felts received proper notice from Volvo that it would consider his absences within the gap period as chargeable hours. The form Felts submitted with his medical authorization stated that he was requesting FMLA leave as of March 1; Volvo's NVRP form provides a March 16 date. (Pl.'s Br., Exs. C, D.)

---

[1] Volvo does not dispute for summary judgment purposes that Felts's anxiety qualifies as a serious medical condition.

[2] Felts states, without submitting any supporting evidence, that this appointment was the "earliest available" with Dr. Nottingham. (Pl.'s Br. 3.)

**D. Volvo Asks Felts to Recertify to Reflect Increased Need for Absences, But He Does Not.**

On May 5, 2015, Gene Dillon, the HR representative responsible for managing the administration of Felts's FMLA benefits, emailed Jeffrey Melton, the Business Team Leader at the plant. In the email, Dillon wrote:

> [Felts's] current usage over the last month is not in line with [his authorization]. He is exercising leave 3–5 days per month and about half to two thirds of these are less than the full day authorized. Please warn him that we cannot continue to honor his FML outside of the issued guideline. He must get his FMLA Certification amended to better reflect his current need or only utilize FML within the medical provider's guidelines.

(May 5 Email 1, Ex. A, Dkt. No. 24-9.) In his declaration, Melton asserted that Felts's supervisors, Tim Littreal and Michael Folden, "conveyed the re-certification request" to Felts at Melton's request. (Melton Decl. 2, Dkt. No. 24-9.) Nevertheless, Felts did not submit new FMLA paperwork in May.

On June 9, 2015, Dillon sent Melton another email, which included Excel and calendar images that detailed the way Felts's then-current plan continued to conflict with the frequency of his usages. Dillon wrote: "Due to his increased frequency of use [Felts] will either need to recertify or change his rate of usage. Please advise him that usage about 2 days a week will not be coded FML . . . unless an updated FML Certification is submitted . . . . Let me know if he needs a new FML form as I would like to submit a copy of his usage to his health care provider along with it." (June 9 Email 1, Ex. B, Dkt. No. 24-9.) Littreal confirmed that the request had been conveyed to Felts.[3] (Littreal Email 1, Ex. C, Dkt. No. 24-9.) According to Melton, Volvo started charging Felts unexcused absence hours for absences taken in excess of what was

---

[3] During oral argument, and for the first time, counsel for Felts questioned whether the May 5 and June 10 requests for recertification actually occurred. Counsel did not point to any evidence that would dispute the requests. To the contrary, the complaint states that Felts met with an HR representative regarding his absences on June 7, 2015, and the representative told Felts that he had "accumulated 84 hours of unexcused absences from work in 2015." (Compl. ¶ 9.) The complaint also states that Volvo notified Felts on July 11, 2015, that his physician would need to revise his certification. (*Id.* ¶ 14.)

4

approved in his certification on June 10.  (Melton Decl. 3.)

The day after Dillon's June 10 email, records from Volvo's timekeeping program, AT Server, include a note written by Michael Folden: "Cameron asked to use FMLA and was told he had exhausted his allowed FMLA usage for this week and he said he would just take the points." (June 10 Note, Ex. D, Dkt. No. 24-9.)  Similarly, on June 12, the records include another note by Folden: "[Felts] left after 8 hours.  Told his supervisor he would take the points." (June 12 Note, Ex. D, Dkt. No 24-9.)  Felts did not submit new FMLA paperwork in June.

**E. Volvo Places Felts on CAP, and Felts Submits Recertification Paperwork.**

On July 15, 2015, Volvo placed Felts on CAP due to his absences.  (Compl. ¶ 15.) Ascertaining how many hours of absences existed at the time, however, is far from easy.  As the court will detail further in Section III.B., Volvo told Felts that he had over 80 hours of absences at the time.  Nevertheless, other Volvo employees looked at the AT Server records shortly thereafter, and they came to the conclusion that a mistake had been made and that Felts only had around 40 hours of absences.  Today, those same employees argue that they were incorrect in their assertion that Volvo was incorrect, and that—due in part to how absences roll off and codes are changed during a rehire—Volvo was correct, after all, in its conclusion regarding 80 hours. (*See* Section III.B at 10–11.)  For his part, Felts argues that Volvo's AT Server records are subject to a spoliation inference because Volvo altered and destroyed the records, and that the employees' later assertions are sham declarations.

On July 17, Felts submitted his recertification paperwork, which authorized him on a going forward basis to take leave up to three times per week, one day per occurrence.  Volvo requested new paperwork because the recertification was written on top of the old form.  Dr. Nottingham submitted the new paperwork on July 23, and his request was approved on July 24.

5

Volvo granted approval from July 11, 2015, to July 11, 2016. (Dillon Decl. 5–6.)

**F. Felts Faces DWI Charges on June 8–9, 2015, and Notifies Volvo That He is Taking FMLA Leave on Those Days.**

Meanwhile, Felts was pulled over at approximately 2:00 a.m. on June 8 due to a police officer's suspicion that he was driving intoxicated. Felts stated that he had an open container of liquor and had drunk some of it while he was driving the car. (Pl.'s Dep. Tr. 174:1–175:19.) The results of his two breathalyzer tests in the field showed that his blood alcohol level was above the legal limit. (*Id.* at 176:5–177:1.) Felts was arrested at approximately 3:00 a.m., spent the night in jail, and was released on bond at 1:50 p.m. on June 8. Felts called Volvo and took leave under FMLA for his 3:00 p.m. shift. (*Id.* at 184:14.) Felts appeared in court for his arraignment the next day, which concluded around 2:00 p.m. Felts then called Volvo and again took leave under FMLA for his 3:00 p.m. shift on June 9. (*Id.* at 192:9–10.)

Volvo asserts that it learned of Felts's violation of Shop Rule 29—his calling in to take leave under the FMLA on June 8 and 9—after Felts's placement on CAP.

**G. Volvo Terminates Felts.**

On September 7, 2015, Felts arrived three minutes late to a scheduled shift. (Compl. ¶ 19.) On September 9, Volvo terminated him for violating CAP. Former Director of Human Resources Gerald Shiffner stated that Volvo might have terminated Felts on an even earlier date had it learned of the Shop Rule violation sooner. (Shiffner Decl. at 2.)

**H. The Union Files a Grievance Requesting Felts's Reinstatement.**

On September 10, 2015, the union filed a grievance on Felts's behalf, protesting his termination and requesting his reinstatement. Shiffner, Lilly, and Elswick assert that the focus of negotiations was not absence hours, but rather Felts's violation of Shop Rule 29. (Shiffner Decl. 4; Lilly Decl. 3; Elswick Decl. 5.) On August 22, 2016, Felts submitted paperwork to Volvo

regarding his DWI. (Ex. B., Dkt. No. 24-4.) On August 24, Felts's union representative accepted Volvo's offer to return Felts to work on a last chance basis without back pay. (Ex. C, Dkt. No. 24-4.) The union representative retracted his offer, however, because Felts sought monetary compensation.

**I. Volvo Reinstates Felts on a Last Chance Basis.**

Felts signed a Last Chance Agreement on November 28, 2016, and agreed to return to work at Volvo without back pay. He returned to work as an assembler. Volvo granted him paid leave due to his anxiety from March until May 2017. (Elswick Decl. Ex. D.) In April 2017, Felts underwent carpal tunnel surgery "on both . . . wrists for heavy to extremely heavy carpal tunnel syndrome." (Pl.'s Dep. Tr. 32:2–4.) When Felts was authorized by his doctor to return to work, Volvo placed him back in his former position of welder. (*Id.* at 35:18; Elswick Decl. Ex. D.)

II. FELTS'S CLAIMS

Count I is an interference claim, which asserts that Volvo interfered with Felts's lawful exercise of his FMLA rights by mis-designating his FMLA-qualifying leave hours as unapproved, by overstating the number of FMLA-qualifying leave hours Felts actually took, and by forcing Felts to sign the CAP.

Count II is a retaliation claim, which asserts that Volvo retaliated against Felts for exercising his FMLA rights by intentionally miscounting and mis-designating his FMLA-qualifying leave hours as unapproved, which resulted in Felts having to sign the CAP.

Count III is also a retaliation claim, which asserts that Volvo retaliated against Felts for exercising his FMLA rights by terminating him pretextually, refusing to pay him back pay and benefits, demoting him to a lower rate of pay, and putting him on a period of probation.

III. DISCUSSION

A. **Standard of Review**

Summary judgment may be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits . . . [and] 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316, F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The party opposing the motion, however, "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). Parties may point to such facts by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

B. **A Genuine Dispute of Material Fact Regarding Felts's Unexcused Absence Hours and the Appropriateness of His Placement on CAP Precludes Summary Judgment as to the Interference Claim.**

The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To establish a claim for FMLA interference, a plaintiff must show that "(1) [h]e is entitled to an FMLA benefit; (2) h[is] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427

(4th Cir. 2015). An FMLA interference claim differs from an FMLA retaliation claim in that "motive is largely irrelevant when analyzing an interference claim." *Santorocco v. Chesapeake Holding Co.*, No. 08-cv-3049, 2010 WL 2464972, at *4 (D. Md. June 10, 2010) (citations omitted). The parties do not dispute that Felts was entitled to FMLA leave in general; rather, they dispute whether the factual record reflects any actionable interference with his FMLA leave.

Although the FMLA provides that an employer may not "interfere with . . . the employee's exercise of his or her right[s]," there is no statutory definition or explanation under the FMLA as to what constitutes interference. 29 U.S.C. § 2615(a)(1). Felts argues that because his certification stated only an estimate as to the frequency of his FMLA leave, Volvo interfered with his rights by taking adverse action based upon the fact that his absences exceeded the estimate. But where the frequency of absences exceeds the estimate, an employer is to request recertification—which Volvo did—rather than simply denying the leave. *See Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, at 841–42 (7th Cir. 2014). Additionally, Felts argues that any "miscoding" of FMLA-protected leave as personal leave constitutes a *per se* interference with an employee's rights. But the case upon which Felts relies, *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003), does not support such a sweeping proposition. In *Liu*, the employer conceded that the plaintiff's FMLA-qualifying leave was misidentified as personal leave, but the district court concluded that, ultimately, the plaintiff was not denied her FMLA rights "because there was no practical distinction between the personal leave she was granted and the FMLA leave to which she was entitled." 347 F.3d at 1135. The Ninth Circuit disagreed, reasoning that the plaintiff "presented a triable issue of fact as to whether her rights under FMLA were violated by the misidentification of her FMLA leave as personal leave" because, by having her leave designated as "personal," the plaintiff "was subject to the control

9

and discretion of her supervisor in taking leave she had a statutory right to take." *Id.*

At the threshold, and in contrast to *Liu*, Volvo adamantly disputes that any of Felts's FMLA-qualifying leave was misidentified or overstated. Additionally, Volvo argues that even if it were—that is, even if Felts had accumulated only 44 or 42 unexcused absence hours—it would still have been appropriate to place him on CAP. Felts, on the other hand, argues that so few absence hours would not warrant his placement in CAP. Self-contradictory statements made by David Lilly, Volvo's labor relations representative, and Gerald Shiffner, Volvo's human resources director, underscore this dispute about the proper number of unexcused absence hours and the appropriateness of Felts's placement in CAP. In a letter dated October 29, 2015, Lilly wrote to Greg Shank, the bargaining chairman of UWA Local 2069: "If Cameron Felts had been coded correctly in the AT Server there would have been no reason to place him in the Chronic Attendance Program. His coding has been corrected." (Lilly Ltr., Pl.'s Ex. A, Dkt. No. 22-1.) Similarly, in a November 1, 2016 email to Daniel McRorie, a business unit manager at Volvo, Shiffner stated: "The sad part of this whole story is we don't know why [Felts] was ever put in the chronic attendance program, the records reflect that he only had 44 hours[;] we don't put employees in the program with 44 hours." (Shiffner Email, Pl.'s Ex. B, Dkt. No. 22-2.)

Volvo asks the court to disregard these statements as "incorrect" in light of later statements made by Lilly and Shiffner. With respect to the number of hours of unexcused absences, Lilly stated in his March 2018 declaration: "After Mr. Felts was terminated, on or about October 29, 2015, I arrived at the conclusion (based on what I now know to be incorrect information) that Mr. Felts' hours were not recorded correctly . . . ." (Lilly Decl. 2, Dkt. No. 24-4.) Lilly went on to assert that, "[u]pon review of Volvo's findings, I agree that Mr. Felts in fact had accumulated over 84 absence hours." (*Id.* at 5.) In his deposition, Lilly explained: "[W]hen

10

I [pulled Felts's attendance out] I believe that he was at 40 hours when I looked at it. But I've since learned that someone had removed a lot of and recoded a lot of his hours." (Lilly Dep. Tr. 5, Dkt. No. 29-3.) For his part, Shiffner stated in his March 2018 declaration: "I relied upon Mr. Lilly's conclusion about Felts' hours and did not perform an independent calculation of my own," (Shiffner Decl. 3, Dkt. No. 24-5), and "I agree with Volvo's findings that Felts in fact had accumulated over 84 absence hours by July 15, 2015" (*id.* at 5.) With respect to the appropriateness of Felts's placement in CAP, Lilly asserted: "Though I do not put people on Chronic Attendance with 44[] hours there is no prohibition in doing so." (Lilly Decl. 4.) Likewise, Shiffner explained: "[T]here is no minimum number of unexcused absence hours for placement on Chronic Attendance. Though it was not my inclination to place employees on Chronic Attendance with 44 hours, other HR representatives have done so." (Shiffner Decl. 5.)

Lilly's and Shiffner's explanations as to why their earlier statements were "incorrect" may be legitimate, but that is not for this court to decide. Summary judgment is generally not appropriate in the face of conflicting evidence because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.[4] *See Anderson*, 477 U.S. at 247–48. Here, the conflicting evidence gives rise to a genuine dispute of material fact. *See id.* at 248 (emphasizing that if "the evidence is such that a reasonable jury could return a verdict for

---

[4] Thus, the court need not reach the parties' arguments as to whether Volvo failed to provide Felts with the mandatory notices required by statute. The court notes, however, that it rejects Felts's arguments that 1) Volvo had to issue a written, rather than oral, request for him to recertify to reflect an increased need for absences, and 2) recertification may only be requested regarding the duration, not the frequency, of absences. An oral request for recertification is permissible under 29 C.F.R. § 825.305(a). Likewise, the statute explicitly authorizes recertification due to changes in frequency of absences. *Id.* § 825.308(c)(2) (authorizing recertification where the "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence [.])"). Furthermore, even if Felts established that Volvo failed to provide him mandatory notice regarding either the March or the June through July absences, the court cannot determine whether Felts was prejudiced by the failure at this stage. Felts stated that he was not aware that the March dates were counted as unexcused (Pl.'s Dep. Tr. 282:6–16, Dkt. No. 22-20), and counsel at oral argument argued that this statement demonstrates that Felts would have structured his leave differently had he received proper notice. But "[a]ssessment of the credibility of these statements, and any countervailing evidence, rests squarely within the purview of the trier of fact." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 303 (4th Cir. 2016).

11

the nonmoving party," then a dispute of material fact precludes summary judgment). It is not this court's role to decide at summary judgment whether Lilly's and Shiffner's later statements were adequate to justify earlier alleged errors, or to weigh hypothetical scenarios as to whether Felts would have been placed on CAP with only 42 or 44 hours of unexcused absences. Accordingly, both Felts's and Volvo's motions for summary judgment will be denied as to Felts's interference claim.

**C. The Genuine Dispute of Material Fact Regarding Felts's Unexcused Absence Hours and the Appropriateness of His Placement on CAP Also Precludes Summary Judgment as to the Retaliation Claim in Count Two.**

In Count Two, Felts asserts that Volvo retaliated against him by intentionally miscounting and mis-designating his FMLA-qualifying leave hours, which resulted in his placement in CAP. Retaliation claims under the FMLA are analyzed under the same burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016); *Bailey v. Quest Diagnostics, Inc.*, No. 1:17-cv-625, 2017 WL 6524950, at *5 (E.D. Va. Dec. 19, 2017). Under this framework, the plaintiff must first establish a prima facie case of retaliation. To do so, a plaintiff must show that "(1) [h]e engaged in protected activity; (2) the employer acted adversely against h[im]; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citations omitted).

Once a plaintiff has made out a prima facie case of FMLA retaliation, the burden of production shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for its adverse action. *See Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (internal quotations and citations omitted). If defendant meets this burden of production, then the burden shifts back to the plaintiff to demonstrate that the defendant's stated reasons are pretextual. *Id.*

12

The plaintiff can satisfy this burden by "showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." *Id.* Thus, interference and retaliation claims differ in that an "'interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.'" *Bosse v. Baltimore Co.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).

Volvo argues that Felts fails to establish a prima facie case of FMLA retaliation because, at the outset, the facts demonstrate that he did not engage in protected activity, there is no causal connection between his placement on CAP and his request for additional FMLA leave, and in any event, he cannot overcome Volvo's legitimate non-discriminatory reasons for placing him on CAP. Felts argues in turn that his requesting intermittent FMLA leave for which he was approved was protected activity, that he would not have been placed on CAP but for the intentional miscounting, and that the record contains strong evidence of pretext.

The court finds that Felts has made a sufficient showing of protected activity through his requesting leave. *See Sherif v. Univ. of Md. Med. Ctr.*, 127 F. Supp. 3d 470, 482 (D. Md. 2015). Nevertheless, as discussed above, there is a genuine dispute of material fact as to whether approximately 40 hours of Felts's absences were properly coded as FMLA-protected or not. Likewise, to the extent Volvo contends that its reason for placing Felts on CAP was legitimate and nondiscriminatory, its reason is only "legitimate" if a) those 40 hours that comprise the difference between the estimates of 42 or 44 and 84 hours were not FMLA-protected, or b) 42 or 44 hours of unexcused absences would have sufficed to place him on CAP. The resolution of these questions of fact is for the jury. *See Anderson*, 477 U.S. at 255 ("[T]he weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

13

a judge [when] ruling on a motion for summary judgment."). Thus, both Felts's and Volvo's motions for summary judgment will be denied as to Felts's retaliation claim in Count Two.

**D. As a Matter of Law, Felts Cannot Prevail on His Retaliation Claim in Count Three.**

In Count Three, Felts asserts that Volvo retaliated against him by terminating him pretextually, refusing to pay him back pay and benefits post-reinstatement, demoting him to a lower rate of pay, and putting him on a period of probation.

With respect to his termination, even assuming that Felts can establish a prima facie case, he cannot prevail because he cannot establish that Volvo's reasons for terminating him were pretextual. The *McDonnell Douglas* framework demands proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action. *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). Here, Volvo has stated a legitimate, non-discriminatory basis for terminating Felts: he showed up late for a shift, which Felts does not dispute, in violation of the CAP. Although Felts argues that this reason was pretextual, he "makes no evidentiary showing in that regard." *Vannoy*, 827 F.3d at 305 (citing *Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge.")). Nothing in the record suggests that those responsible for Felts's termination knew—or had any reason to know—that the number of unexcused absence hours were inaccurate, if indeed they were. To the contrary, Felts concedes that he did not raise the issue of his number of unexcused absence hours until after the adverse action.

With respect to back pay, Volvo has stated a legitimate, non-discriminatory basis for not awarding it. On June 8–9, 2015, Felts called in for FMLA leave when the undisputed facts show

14

that he had been in jail and attended a court appearance for a DWI charge. Volvo abides by Shop Rule 29, which prohibits the "falsification of time or records or misrepresenting yourself with information provided to the Company," and is grounds for immediate termination. (Lilly Decl. 2; Shiffner Decl. 2; Elswick Decl. 12.) Indeed, Volvo has fired other employees for violating Shop Rule 29. (Elswick Decl. 12.)

In 2016, Felts agreed to return to work without back pay (Pl.'s Dep. Tr. 247:15–19), and he signed a last chance agreement. Volvo asserts, and the record supports, that the central reason for its decision not to award back pay was Felts's violation of Shop Rule 29. (*See, e.g.*, Lilly Decl. 4 ("Elswick, Shiffner and I made the decision on behalf of Volvo to bring Mr. Felts back to work. We did not award Mr. Felts back pay in large part due to Mr. Felts' Shop Rule violation. Volvo does not award back pay under those circumstances"); Shiffner Decl. 4 (same); Elswick Decl. 5 ("The focus of Felts' grievance negotiations was . . . his violation of Shop Rule 29."). *See also* Lilly Ltr. 1 ("[June 8–9, 2015] will not be excused and it is our position that Mr. Felts obtained these days fraudulently in order to go out that evening to consume alcohol. He got arrested and ended up having to call in another night . . . . We must deny this grievance").)

Felts cannot overcome this legitimate, non-discriminatory reason for Volvo's decision to not award back pay. He does not dispute that on June 8–9, he was in jail and attended a court appearance for a DWI charge. Rather, Felts argues that his medical condition—anxiety and panic attacks—was at play because, although he was released from jail with plenty of time to make it to his shift, he was suffering from a severe panic attack "as a result of his wrongful incarceration."[5] (Pl.'s Opp'n 14, Dkt. No. 29.) But to the extent Felts "contends that his misconduct should be excused because it is related to the health condition for which he required

---

[5] The charge was *nolle prossed* which, as Volvo points out, does not compel the conclusion that the charge or incarceration was "wrongful." Regardless, details regarding the charge are not before this court and are irrelevant to the matter at hand.

FMLA leave, his argument lacks merit." *Vannoy*, 827 F.3d at 305 n.6 (citations omitted). Volvo has proffered overwhelming evidence that it chose not to award back pay because of the Shop Rule violation, about which there are no material factual disputes, and Felts has pointed to no evidence whatsoever that would suggest pretext as to this decision.

Finally, Felts cannot prevail on his retaliation claim with respect to his status after Volvo rehired him. Although he formerly worked as a welder, Felts returned to work in November 2016 in the position of assembler. Volvo granted him paid leave due to his anxiety from March until May 2017. (Elswick Decl. Ex. D.) In April 2017, Felts underwent carpal tunnel surgery "on both . . . wrists for heavy to extremely heavy carpal tunnel syndrome." (Pl.'s Dep. Tr. 32:2–4.) When Felts was authorized by his doctor to return to work, Volvo placed him back in his former position of welder. (*Id.* at 35:18; Elswick Decl. Ex. D.) It is not clear from the record whether Felts's hand injuries or a lack of available welder positions or some other reason occasioned Felts's being placed as an assembler from November 2016 to March 2017. Nevertheless, the FMLA requires an employer to restore an employee to the same or equivalent position only the employee returns from eligible leave, not when he is rehired following a violation of company attendance policies or shop rules. 29 U.S.C. §§ 2614; *see also Harris v. D.C. Water & Sewer Auth.*, 172 F. Supp. 3d 253, 268 (D.D.C. 2016). Felts cannot prevail on his retaliation claim regarding Volvo's termination and post-termination action as a matter of law. The court thus will grant Volvo's motion for summary judgment as to Count Three.

## IV. CONCLUSION

For the reasons stated above, the court will deny Felts's motion for summary judgment, and it will grant in part and deny in part Volvo's motion for summary judgment. It will deny Volvo's motion as to Counts One and Two and grant it as to Count Three. An appropriate order will follow.

Entered: May 15, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge