IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CAMERON R. FELTS,             )
                                  )
       Plaintiff,             )
                                  )
v.                                )        Civil Action No. 7:17-CV-00297
                                  )
VOLVO GROUP NORTH AMERICA, LLC,  )
                                  )
       Defendant.        )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

In a Memorandum Opinion (ECF 51) ("Opinion") and Order (ECF 52) dated May 15, 2018, the Court granted partial summary judgment for Defendant Volvo Group North America, LLC ("Volvo") as to Count III of Plaintiff Cameron Felts's ("Felts") Complaint (ECF 1) asserting interference and retaliation claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"). In its Opinion, the Court concluded Felts "cannot establish that Volvo's reasons for terminating him were pretextual." (Opinion, ECF 51, at 14.) The Court also found as a matter of law "that the central reason for [Volvo's] decision not to award backpay was Felts's violation of Shop Rule 29." (Id. at 15.) With the utmost respect, Felts urges the Court to reconsider its Opinion. The Court made factual findings that are in significant dispute and erroneously granted summary judgment for Defendant as to Count III based on its findings.

On May 17, the parties convened before the Court for a pretrial conference during which the Court afforded Felts leave to file this Motion for Reconsideration. Felts respectfully requests that the Order of the Court granting Volvo summary judgment as to Count III be vacated pursuant

1

to Federal Rule of Civil Procedure 54(b) and other applicable law. Felts supports his motion with this memorandum.

Preliminary Procedural Matters

A.      The Opinion And Order Should Reflect That Felts's Motion for Partial Summary Judgment as to His Serious Health Condition Is Granted.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Felts moved for partial summary judgment as to the element of his claims that he suffers from a serious health condition. (Plaintiff's Memo. In Support, ECF 22, at 22; Plaintiff's Reply Memo. In Support, ECF 31, at 1-2.) Volvo conceded Felts qualified for FMLA leave based on his serious health condition. (Opinion, ECF 51, at 3 n.1; Volvo's Memo. in Opp., ECF 28, at 24-25.) Summary judgment on this undisputed point therefore should be awarded to Felts.

A non-moving party may not survive summary judgment by making unsupported allegations that factual issues exist. See Fed. R. Civ. Proc. 56(c), (e). To defeat a summary judgment motion, the non-movant must come forward with specific facts demonstrating there are genuine issues for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See also, e.g., Ferguson v. Messer, 2017 U.S. Dist. LEXIS 47334, at *15 (W.D. Va. Mar. 30, 2017) (Dillon, J.) ("The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation."); Freeman v. Clarke, 2017 U.S. Dist. LEXIS 26704, at *12 (W.D. Va. Feb. 27, 2017) ("Freeman cannot defeat Defendants' properly supported summary judgment motion, however, with mere groundless generalizations or speculation."). Volvo marshaled no evidence to oppose Felts's motion for summary judgment as to this part of his claims. Indeed, Volvo stipulated that it did not contest the qualifying seriousness of Felts's medical

condition. The Opinion and Order should reflect that Felts's Motion for Partial Summary Judgment in granted as to his serious health condition.

B.    Count III Incorporates Both FMLA Interference and Retaliation Claims.

The Court misframes Count III as solely a retaliation claim. (Opinion, ECF 51, at 7, 14 ("Count III is also a retaliation claim . . . . .")). In Count III, Felts pleads both interference and retaliation theories of liability under the FMLA. (Complaint, ECF 1, para. 33.) Specifically, Count III incorporates Counts I and II and alleges Volvo violated both of these closely related theories of liability under the FMLA by, *inter alia*, terminating Felts and reinstating him without backpay. (Complaint, ECF 1, para. 34-36 ("Volvo willfully and in bad faith violated the FMLA and regulations . . . by retaliating against Felts for exercising his rights under the FMLA ***and*** terminating him pretextually for appearing three minutes late ***and*** subsequently refusing to pay him backpay and benefits when it finally reinstated him about 14 months later.") (emphasis added).) "As a direct and proximate result of Volvo's ***violations*** of the FMLA and associated regulations, Felts has sustained lost wages, fringe benefits and other forms of compensation; lost career opportunities; and other pecuniary and nonpecuniary damages, injuries and losses." (Complaint, ECF 1, para. 37 (emphasis added).)

The Court grants partial summary judgment for Volvo on Count III because it accepts Volvo's asserted legitimate, non-discriminatory reasons for terminating Felts and denying him backpay upon reinstatement. For the reasons described below, the Opinion is materially flawed. At a minimum, though, the Court's Opinion and Order should be summarily vacated because Volvo's state of mind is irrelevant for purposes of FMLA interference in Count III. See, e.g., DePaula v. Easter Seals El Mirador, 859 F.3d 957, 978 (10th Cir. 2017) ("Because intent is not necessary for FMLA interference claims and [] there is no burden-shifting McDonnell Douglas

3

analysis, summary judgment for the employer is warranted when there is no genuine dispute as to any material fact regarding alternative reasons for termination; no pretext analysis is necessary.") (internal quotation marks omitted); Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

Factual Oversights and Omissions

The Court's Opinion overlooks several material facts and draws inferences in favor of Volvo in contravention of summary judgment standards. See Fed. R. Civ. Proc. 56. These factual oversights and omissions are outlined below.

1. Volvo's policy in 2015, under the Human Resources Director Gerald Shiffner, was employees with 44 hours or fewer are not placed in the Chronic Attendance Program.

On page 2 of the Opinion, the Court describes Volvo's attendance policy and the Chronic Attendance Program ("CAP"). The Court states: "While some HR representatives at Volvo have stated that they personally do not place employees on CAP with 44 hours or less of unexcused absences (Lilly Decl. 4, Dkt. No. 24-4; Shiffner Decl. 5, Dkt. No. 24-5), others have placed employees on CAP with as few as 32 hours (Elswick Decl. 4)." (Opinion, ECF 51, at 2.) Volvo's declarations are materially ambiguous on this point. Volvo offers no evidence regarding how many employees it has placed in the CAP with 32 chargeable hours, whether such an employee demonstrated a pattern of absences that warranted the CAP under circumstances distinguishable from the case at bar, and when any employee was placed in the CAP with that number of hours. Volvo's policy may have changed since 2015 when Gerald Shiffner was Volvo's Human Resources Director. Volvo's policy in 2015 under Shiffner was that employees with 44 hours are not placed in the CAP.  "The sad part of this whole story is we don't know why [Cameron Felts]

was ever put in the chronic attendance program, the records reflect that he only had 44 hours we don't put employees in the program with 44 hours." (Volvo's Memo. in Support, Shiffner Decl. Exhibit B, ECF 24-5.)

      2.      <u>Felts's medical certification was not required to be submitted within 15 days of March 1, 2015.</u>

On page 3 of the Opinion, the Court states "Felts was aware that he needed to recertify for FMLA leave in March 2015 and that the medical recertification had to be submitted to Volvo within 15 days of any FMLA leave." Actually, the timeframe in which the certification was due is more nuanced. The timing in which an employee may submit a medical certification is defined by regulation.

> (d) Timing. The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.

29 C.F.R. § 825.308(d). Volvo has in the past given employees, including Felts, more than 15 calendar days to submit a medical certification. (Dillon Dep. 15-16; 39-40.) Felts made diligent, good faith efforts to submit his medical certification in a timely manner by getting an appointment with Dr. Nottingham "as soon as [he] possibly could." (Pl's Response Br. 5 (citing Felts Dep. 282) ECF 29.)[1]

---

[1]The Court criticizes Felts's counsel for "stat[ing], without submitting any supporting evidence, that this appointment was the earliest available with Dr. Nottingham." This criticism is unwarranted. Felts cited page 282 of Felts's deposition in support of this fact. (Pl's Response Br. 5.)

Meanwhile, the Court does not address Volvo's failure to approve Felts's FMLA paperwork during the pendency of Volvo's protracted and unfounded inquiry into its authenticity. Even if Volvo had discretion to strictly apply the 15-day rule, the medical certification submitted on March 19 would

3.  Felts disputes whether Volvo asked him to obtain a medical recertification in May or June 2015.

On page 4 of the Opinion, the Court quotes several emails from Gene Dillon, a Human Resources Representative for Volvo, to other Volvo supervisors. Dillon's emails of May 5 and June 9, 2015 discuss Felts's rate of FMLA usage and indicate Felts would need to submit a new medical certification form at an unspecified time. Dillon's emails also state that Volvo would "submit a copy of his usage to his health care provider." (Opinion, ECF 51, at 4.) Volvo never did this. Felts has disputed Volvo's contention that these communications took place from the outset of this litigation. (Complaint, ECF 1, para. 14.) Felts explained during his deposition that the recertification request was not communicated to him until he was placed in the CAP in July 2015. (Felts Dep. 138.) Felts's deposition testimony is supported by Volvo's AT Server records, which show that Volvo coded Felts's absences in May and June 2015 as non-chargeable FMLA leave. (Pl's Reply Brief, Exhibit R, ECF 31-1; Volvo's Memo. in Support, Elswick Decl. Exhibit E, ECF 24-3.) Accordingly, the facts viewed in the light most favorable to Felts demonstrate no such recertification request was made. See Fed. R. Civ. Proc. 56.

Even if the Court elects to credit Volvo's version of events over Felts's in contravention of the summary judgment standard, Volvo still failed to comply with the notice requirements under the FMLA for medical recertification requests. An employer must provide the employee from whom recertification is requested notice of the timeframe for submitting it. See 29 C.F.R. 825.308(d). "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate

_____

capture Felts's requests for FMLA leave from March 4 forward. (See Pl's Response Br. 5 (citing Dr. Nottingham's Dep. 102-03; Dillon Dep. 39-40.)

certification." 29 C.F.R. § 825.305(d).[2] Volvo offers no evidence that it told Felts of the timeframe in which he was required to submit such certification. Having provided no notice of any deadline for this recertification, Volvo was not entitled to retroactively charge Felts under its attendance policy for absences purportedly in excess of his certification. Felts, moreover, had not exhausted his FMLA leave bank and continued to provide Volvo with sufficient notice of his need for leave.[3]

4.  <u>The Court does not address obvious discrepancies in Volvo's time records and actually relies upon those records</u>

Nowhere in the Opinion does the Court address Volvo's admission that it "manually chang[ed]" Felts's time records sometime after his reinstatement. As Felts argues in his summary judgment briefs, some of the changes to the time sheets are obvious on the face of the record. (Pl's Reply Br. at 5-6 (comparing Volvo 000102 with 00056).) Other changes to Felts's AT Server data are more subtle. For instance, Volvo relies on AT Server "notes" for counting "chargeable" absences even where its own time sheets show FMLA-approved absences. (Pl's Reply Brief, Exhibit R, ECF 31-1; Volvo 000102, 000103, 000104, 1000105;  Volvo's Memo. in Support, Elswick Decl. Exhibit E, ECF 24-3.)

On page 5 of the Opinion, the Court quotes two AT Server notes, one for June 10 and the other for June 12, to suggest Felts incurred chargeable absences on those dates. He did not. Felts's time sheet for the week including those dates shows Felts's absences were approved FMLA leave.

---

[2] This provision applies equally to "any case where an employer requests a certification permitted by these regulations, whether it is the initial certification, a recertification, a second or third opinion, or a fitness for duty certificate, including any clarifications necessary to determine if such certifications are authentic and sufficient." 29 C.F.R. § 825.305(d).

[3] <u>See</u> <u>Dotson v. Pfizer, Inc.</u>, 558 F.3d 284, 295 (4th Cir. 2009) (holding that an employer's "own failure to determine whether leave should be designated as FMLA-protected" may not shield the employer from liability and "declin[ing] to allow an employer to take advantage of its own lapse in such a way").

(Pl's Reply Brief, Exhibit R, ECF 31-1, Volvo 000102;  Volvo's Memo. in Support, Elswick Decl. Exhibit E, ECF 24-3.)[4]

The Court's decision should not rely upon the AT Server data. Volvo "admits that it made changes to the coding in Felts's AT Server records after he was reinstated." (Def. Memo. in Support of Mot. in Limine, ECF 43, at 2;  Volvo's Memo. in Support, Elswick Decl. at 7, ECF 24-3; Elswick Dep. 11; 22-23-32-33.) Lilly, who has worked for Volvo for more than 20 years, stated: "Well, I think once it was determined that the hours had been changed everybody knew that something was wrong. They determined that he had a lot more hours charged against him." (Lilly Dep. 21. See also Lilly Dep. 14, 17, 22-34, 44, 46.)

5.  <u>With respect to Felts's DWI charge on June 8, 2015, the Court relies upon inadmissible evidence, but omits any reference to the Breath Alcohol Certificate that showed Felts's blood alcohol level was well below the legal limit.</u>

On page 6 of the Opinion, the Court details the events leading to Felts's arrest and arraignment on June 8-9, 2015. The Court's recitation closely tracks Volvo's brief. The Court neglects to mention Felts passed the breathalyzer test at the police station with a 0.05, well below the legal limit for blood alcohol concentration in Virginia. Felts attaches the Breath Alcohol Certificate to his summary judgment briefs. (Pl's Memo. in Opp. Exhibit P, ECF 29-1.) The Court also does not mention in its recitation that the DWI charge was *nolle prossed*. The Court acknowledges that fact at the end of the opinion in a footnote. (Opinion, ECF 51, at 15 n. 5.)

---

[4] The Court correctly states, on page 2 of the Opinion, Volvo's "roll off" policy applies only to chargeable absence hours. FMLA leave does not qualify as a chargeable absence. Thus, the FMLA-coded leave during this period in June and July 2015 would not roll off under Volvo's policies. This reduces Volvo's absence-hour calculation substantially. (Volvo's Memo. in Support, Elswick Decl. at 6, ECF 24-3)

Although it fails to cite Felts's exculpatory Breath Alcohol Certificate and the dismissal of the charge, the Court does recount that "two breathalyzer tests in the field showed that his blood alcohol level was above the legal limit." (Opinion, ECF 51, at 6.) Virginia courts consider field breathalyzer tests so unreliable that they are not admissible at trial.

> The results of the breath analysis shall not be admitted into evidence in any prosecution for an offense listed in Subsection A [including VA CODE ANN. § 18.2-266], the purpose of this section being to permit a preliminary analysis of the alcoholic content of the blood of a person suspected of having committed an offense listed in Subsection A.

VA CODE ANN. § 18.2-267(E); Hall v. Commonwealth, 1999 Va. App. LEXIS 543, 199 WL 1133268, at *17-18 (Va. Ct. App. 1999) (holding "Code 18.2-267(E) applies to bar the results of the preliminary analysis . . . This evidence may not be admitted upon retrial"). See also Santen v. Tuthill, 265 Va. 492, 497-99 (2003) (affirming judgment of the trial court finding field breathalyzer analysis inherently unreliable and, thus, inadmissible in a civil suit).  Felts raised this point in his response brief. (Pl's Memo. in Opp. 13-14.)[5]

Due to the inherent unreliability of field breathalyzer tests, federal courts applying the Daubert standard also do not admit their results at trial. See, e.g., United States v. Iron Cloud, 171

---

[5] The view of Virginia's legislature that field breathalyzer tests are fundamentally unreliable and thus inadmissible is shared by the large majority of jurisdictions. See, e.g., Boyd v. City of Montgomery, 472 So. 2d 694, 697 (Ala. Crim. App. 1985) ("Although these preliminary checking devices for the purpose of determining the presence of alcohol are very helpful to police officers in the performance of their duties, they have no place in the courtroom."); State v. Zell, 491 N.W.2d 196, 197 (Iowa Ct. App. 1992) ("The results of the preliminary screening test are inadmissible because the test is inherently unreliable and may register an inaccurate percentage of alcohol present in the breath, and may also be inaccurate as to the presence or absence of any alcohol at all."); Patrick v. State, 750 S.W.2d 391, 394 (Ark. 1988) (accord); Attix v. Voshell, 579 A.2d 1125, 1129 (Del. Super. Ct. 1989) (accord); People v. Keskinen, 441 N.W.2d 79, 82 (Mich. Ct. App. 1989) (accord); Commonwealth v. Stanley, 629 A.2d 940, 942 (Pa. Super. Ct. 1993) (accord); Thompson v. State Dept. of Licensing, 960 P.2d 475, 477 (Wash. Ct. App. 1998) (accord); State v. Beaver, 512 N.W.2d 254, 258-59 (Wis. Ct. App. 1994) (accord).

9

F.3d 587, 590-91 (8th Cir. 1999) (reversing district court that admitted into evidence, with a limiting instruction, a preliminary breath test); United States v. Van Hazel, 468 F. Supp. 2d 792, 797-98 (E.D. N.C. 2006) ("The portable breath test, which is a scientific test, is generally used only as a field test and its reliability has not been conclusively established.").

The Court is correct, however, in concluding Felts was released from the Roanoke City Jail on June 8 at 1:50 p.m., which left him sufficient time to make it to his shift at 3:00 p.m. Also accurate is the Court's conclusion that Felts's arraignment concluded around 2:00 p.m., which likewise left Felts' sufficient time to attend his shift. Felts had suffered multiple anxiety attacks during his incarceration and while awaiting his court appearance. (Pl's Memo. in Opp. p. 14 (citing Felts's Dep. 181.)) The Court accurately states Felts called in pursuant to Volvo's policy to notify the company of his need for FMLA leave. (Opinion, ECF 51, at 6.)

6.    Felts was terminated when he arrived three minutes late to a voluntary overtime shift.

On page 6 of the Opinion, the Court states Felts was terminated when he "arrived three minutes late to a scheduled shift." (Opinion, ECF 51, at 6.) In fact, Felts's termination culminated upon his arrival three minutes late to a voluntary overtime shift. (Volvo's Memo. in Supp., Felts Dep. 168.) This absence would have warranted no more than a two-hour charge under Volvo's attendance policy absent Felts's wrongful placement in the CAP. (Elswick Decl. Exhibit A, ECF 24-3.)

7.    The focus of Felts's grievance was his termination for violating the CAP.

Although Volvo suggests in its summary judgment briefs that the focus of Felts's grievance was the alleged shop rule violation, that contention is not supported by the record. Felts's grievance was focused on his wrongful placement in the CAP and termination upon arriving three minutes

10

late to a voluntary overtime shift. (See Exhibit A, Volvo 000004-000006.) As Felts explained in his summary judgment briefs, if Volvo had not misdesignated Felts's FMLA-qualifying leave as chargeable absences he would not have been placed in the CAP and subsequently terminated for violating the program.  Volvo learned of Felts's incarceration and court appearance on June 8 and 9, 2015 before his termination. (Opinion, ECF 51, at 6.) Still, Volvo points to no evidence that it reprimanded Felts or took any action based on the alleged violation of Shop Rule 29. As discussed above, Volvo coded those absences FMLA days and still deems them approved today.  Volvo did not even raise Shop Rule 29 until the grievance process was well underway.  Shiffner confirmed that the crux of Felts's grievance was not Felts's incarceration. Rather, "[t]he real issue is he was not terminated for this [Shop Rule 29] issue rather for coming into work 3 minutes late and violating his chronic attendance requirements." (Volvo's Memo. in Support, Shiffner Decl. Exhibit B, ECF 24-5.)

       8.     <u>The Opinion incorrectly finds Felts signed a Last Chance Agreement</u>

On pages 7 and 15 of the Opinion, the Court states "Felts signed a Last Chance Agreement on November 28, 2016, and agreed to return to work at Volvo without back pay." (Opinion, ECF 51, at 7, 15.) The Court is mistaken.

Appended to Volvo's Memorandum in Support of its Motion For Summary Judgment is the Last Chance Agreement of November 18, 2016. (Volvo's Memo. in Supp., Elswick Decl. Exhibit C, ECF 24-3.) Volvo asked Felts to sign the Last Chance Agreement. Felts declined. This is apparent from the face of the document.

Felts also did not agree to forego his claim for backpay under the FMLA by accepting reinstatement. During his deposition, Felts testified that his request for backpay actually prolonged

the grievance process. (Volvo's Memo. in Supp., ECF 24-1, Felts Dep. 246-51; Lilly Decl. 4, ECF 24-4.) Chase Elswick, during Volvo's corporate deposition taken pursuant to Rule 30(b)(6), confirmed Felts did not waive his FMLA rights by returning to work in 2016.

> Q.   That document [the Last Chance Agreement dated November 18, 2016] doesn't alter his FMLA rights, right?
>
> A.   No.
>
> Q.   Doesn't waive his FMLA rights?
>
> A.   No.

(Elswick Dep. 106-07.) Volvo has not raised any waiver defense in these proceedings.

<u>Standard of Review</u>

The Court's Opinion and Order grants partial summary judgment for Volvo as to Count III. An order of partial summary judgment is not a final judgment, but merely interlocutory. <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514 (4th Cir. 2003) ("[A]n order of partial summary judgment is interlocutory in nature."). Motions seeking reconsideration of interlocutory orders are not subject to the stringent standards that apply to motions for reconsideration of final judgments pursuant Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. <u>Id.</u> This motion for reconsideration should be considered under Rule 54(b), which governs reconsideration of orders (like those granting partial summary judgment) that do not constitute a final judgment in a case. <u>Id.</u> at 514-15 ("This is because a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.").

Rule 54(b) provides "any order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of

a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A district court maintains inherent authority and discretion to reconsider its interlocutory decisions any time before the entry of final judgment. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983) (noting "every order short of a final decree is subject to reopening at the discretion of the district judge"); Am. Canoe Ass'n, 326 F.3d at 515 ("Law of the case is just that however, it does not and cannot limit the power of a court to reconsider an earlier ruling."). "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515.

Argument

## SUMMARY JUDGMENT FOR VOLVO AS TO COUNT III IS FORECLOSED BY TOLAN V. COTTON, 134 S. CT. 1861 (2014) AND ITS PROGENY.

In its Opinion and Order of May 15, 2018, the Court finds Volvo had a legitimate, non-discriminatory basis for terminating Felts because "[n]othing in the record suggests that those responsible for Felts's termination knew—or had any reason to know—that the number of unexcused absence hours were inaccurate, if indeed they were." (Opinion, ECF 51, at 14.) The Court also finds Volvo stated a legitimate, non-discriminatory basis for denying Felts backpay upon his reinstatement, i.e. the alleged Shop Rule 29 violation.[6] Thus, the Court concludes "Felts

---

[6] Alternatively, the Court suggests Felts agreed to reinstatement without backpay by signing the Last Chance Agreement of November 18, 2015. (Opinion, ECF 51, at 15.) As discussed previously, Felts declined to sign that agreement and consistently requested backpay for the 14 months spanning his termination and reinstatement by Volvo.

has pointed to no evidence whatsoever that would suggest pretext as to this decision." (Opinion, ECF 51, at 16.) Respectfully, the Court's findings are misguided.[7]

The foremost flaw in the Court's decision is that it accepted Volvo's invitation at summary judgment to resolve competing inferences in favor of the moving party. Particularly in the wake of Tolan v. Cotton, 134 S. Ct. 1861 (2014), the Court would err as a matter of law should it permit the Opinion and Order to stand. The Court's decision with respect to Count III resolves in favor of Volvo the credibility questions and material factual issues that are in dispute in this case. In Tolan, the Supreme Court of the United States reversed the district court and court of appeals for granting summary judgment to the moving party. The lower courts " . . . improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party." Id. at 1866-67. The Tolan Court emphasized that the trial and appellate courts misapplied Rule 56 when they "weigh[ed] the evidence and reach[ed] factual inferences contrary to the [plaintiff's] evidence." Id. at 1868.

Applying Tolan, the United States Court of Appeals for the Fourth Circuit has consistently reversed district courts for granting summary judgment in favor of defendants in federal employment law actions. For instance, the Fourth Circuit excoriated the United States District Court for the Eastern District of North Carolina for granting summary judgment to a defendant employer in an employment action arising under the Americans with Disabilities Act ("ADA"). Jacobs v. N.C. Administrative Office of the Courts, et al., 780 F.3d 562, 570 (4th Cir. 2015) ("As in Tolan, the district court 'neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inference should be drawn in favor of the nonmoving party. Rather,

---

[7] As discussed supra, Count III alleges both FMLA interference and retaliation. The Court's holding is fundamentally flawed because it relies solely on Volvo's purported good faith belief, which is not a defense to an FMLA interference claim.

the court incorrectly drew all inferences in favor of the [defendant employer], not [plaintiff employee].") [internal citations omitted]. See also Variety Stores, Inc. v. Wal-Mart Stores, Inc., 2018 U.S. App. LEXIS 10317, at *9 (4th Cir. Apr. 24, 2018) (to be published) ("Although, in ordinary cases, we would only briefly discuss the applicable standard of review, [w]hen the opinion below reflects a clear misapprehension of summary judgment standards. . . . further elaboration is warranted." (internal quotation marks omitted)); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 221 (4th Cir. 2016) (citing Tolan and reversing district court's grant of summary judgment in favor of defendant employer on plaintiff employee's claim of retaliatory and discriminatory discharge); Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 254 (4th Cir. 2015) (accord).

Other Circuit Courts of Appeals have joined the Fourth Circuit in criticizing district courts after Tolan for choosing between competing inferences and making credibility determinations at summary judgment in employment actions. See, e.g., United States ex rel. Miller v. Weston Educ., Inc, 840 F.3d 494, 503 (8th Cir. 2016) (citing Tolan and reversing district court for weighing the evidence in a qui tam suit brought by employees against their former employer); Hansen v. Fincantieri Marine Group, LLC, 763 F.3d 832, 843 (7th Cir. 2014) (citing Tolan and reversing summary judgment award for defendant employer in FMLA action because "the district court chose between competing inferences, drawing adverse inferences against [plaintiff employee], which was improper at the summary judgment stage").

Moreover, the fact-intensive pretext inquiry does not lend itself to resolution at summary judgment. See, e.g., Guessous, 828 F.3d at 219 ("Because [plaintiff's] evidence [of pretext] puts the validity of [defendant-employer's] explanation in doubt, it is sufficient to survive summary judgment."); Foster, 787 F.3d at 250 ("If a plaintiff can show that she was fired under suspicious

15

circumstances and that her employer lied about its reasons for firing her, the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of her termination."); Burton v. Teleflex Inc., 707 F.3d 417, 431 (3d Cir. 2013) (holding that the plaintiff's evidence created a genuine dispute of fact regarding the credibility of the employer's proffered reason for her discharge, and that "a reasonable fact finder could find the [employer's] claim that [the plaintiff] resigned to be unworthy of credence") (internal citation and quotation marks omitted); Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 302 (4th Cir. 2010) (reversing district court for "intrud[ing] on the jury function" when it granted summary judgment to the defendant employer because plaintiff could not demonstrate pretext in light of the employer's "legitimate business judgment"); LaMonaca v. Tread Corp., Civil Action No. 7:14CV00249, 2015 U.S. Dist. LEXIS 80739, at *20 (W.D. Va. June 22, 2015) (Conrad, C.J.) ("[T]he record as a whole, when taken in the light most favorable to [plaintiff], presents a question of fact regarding whether [defendant-employer's] asserted belief . . . was pretext for [FMLA] retaliation."); Weintraub v. Mental Health Auth. of St. Mary's, Inc., Civil Action No. DKC 08-2669, 2010 U.S. Dist. LEXIS 123891, at *31 (D. Md. Nov. 23, 2010) (accord).

The Rule 56 principles articulated in Tolan, applied here, demonstrate that a genuine issues of material fact exist with respect to whether Volvo relied upon a legitimate, nondiscriminatory basis when it cashiered Felts and reinstated him without backpay 14 months later. See U. S. Postal Serv. Bd. Of Governors v. Aikens, 460 U.S. 711, 716 (1983) ("[C]ourts should [not] treat discrimination differently from other ultimate questions of fact."). Viewed singly or in combination, the mosaic of evidentiary proof precludes summary judgment in Volvo's favor on Count III of Plaintiff's Complaint.

1.      Reasonable jurors will find Volvo knew – or had reason to know – that Felts's
absence hour calculation was incorrect.

On page 14 of the Opinion, the Court states: "Nothing in the record suggests that those responsible for Felts's termination knew—or had any reason to know—that the number of unexcused absence hours were inaccurate, if indeed they were." (Opinion, ECF 51, at 14.) The Court goes on to find as a matter of law that Felts "cannot establish that Volvo's reasons for terminating him were pretextual." (Opinion, ECF 51, at 14.)

Felts was discharged on September 9, 2015. The following month, David Lilly, a high level supervisor at Volvo with more than 20 years' experience with the company, wrote a letter to the Union representative handling Felts's grievance. In that letter, Lilly admitted: "If Cameron Felts had been coded correctly in the AT Server there would have been no reason to place him in the Chronic Attendance Program." (Volvo's Memo. in Support, Lilly Decl. Exhibit D, ECF 24-4.) During his deposition, Lilly was adamant that he reviewed Felts's AT Server data before sending the October 29, 2015 letter. The AT Server showed Felts's unexcused absence hours at that time were approximately 40. "All I know is at a particular date [AT Server] showed 40 hours," Lilly stated. (Lilly Dep. 14; 15; 16; 28-29; 32, 46.) Lilly's knowledge is imputed to Volvo. Erdman v. Nationwide, 582 F.3d 500, 506 (3d Cir. 2009) (reversing district court in an FMLA retaliation case for granting summary judgment to employer where former supervisor's knowledge was imputed to the company).

Critically, Volvo believed Felts had accrued only 44 unexcused absence hours for at least one year following Felts's termination. Shiffner's email of November 2016 states Volvo's records showed Felts had accrued only 44 absence hours.

17

The real issue is [Felts] was not terminated for this [June 8-9 FMLA request] issue rather for coming into work 3 minutes late and violating his chronic attendance requirements. The sad part of this whole story is we don't know why he was ever put in the chronic attendance program, ***the records reflect*** that he had only 44 hours we don't put employees in the program with 44 hours.

(Volvo's Memo. in Support, Shiffner Decl. at 5, ECF 24-5) (emphasis added)).

Volvo produces no evidence to support its contention that Lilly and Shiffner made a calculation error with respect to Felts's absence hours. Volvo does admit to changing Felts's AT Server records ***after*** his reinstatement, but provides no evidence to contradict Lilly's recollection of what the AT Server data showed when he reviewed it in the context of Felts's termination in 2015. Indeed, Volvo's reliance on a "mistake" in the records is foreclosed by its failure to provide any context to that assertion. For instance, Volvo fails to explain when the ostensible error was discovered, who uncovered the incorrect calculation, how it was uncovered, or why it took so long to determine the calculation was in error. Volvo supervisors became aware of the purported error from Volvo's counsel in this litigation.

Q.   When was the last time you pulled up AT Server records for Cameron for July of 2014 to July of 2015?

A.   Well, the last time that I pulled up his record in AT Server was when I pulled it up and it was 44 hours.

Our system won't show you that somebody changed the codes or anything like that. I only heard about that. And like I say, I don't recall when that was.

Q.   Do you recall who told you about that?

So is there a possibility that might not be true?

A.   Well, no, I think that -- I know now that it was true.

Q.   Why?

A.   Because we discussed it.

18

Q.   Who is "we"?

A.   Myself and Laura [Liff]. And then I've discussed it with Chase [Elswick]
and some of the other people at the plant that were unaware it had been
changed.

(Lilly Dep. 44-45.) A jury could reasonably find Volvo's mistaken belief excuse implausible in

light of the contemporaneous admissions by Lilly and Shiffner.

The Court further suggests Volvo had no "reason to know" Felts's unexcused absence

hours calculation was incorrect. A jury would likely find the opposite. Keeping time records should

be basic for an employer of Volvo's size and sophistication. Congress under the FMLA has

imposed recordkeeping requirements upon employers like Volvo. "FMLA provides that covered

employers shall make, keep, and preserve records pertaining to their obligations under the Act in

accordance with the recordkeeping requirements of section 11(c) of the Fair Labor Standards Act

(FLSA) and in accordance with these regulations." 29 C.F.R. § 825.500. Under FLSA, "[e]very

employer . . . shall make, keep, and preserve such records of the persons employed by him . . . ."

29 U.S.C. § 211(c). As Felts argued in his brief opposing Volvo's motion for summary judgment

(ECF 22), in the absence of proper recordkeeping, an employee need only make a minimal showing

regarding his time records in order to survive summary judgment. Anderson v. Mt. Clemens

Pottery Co., 328 U.S. 680 (1946); Terino v. Woodstock Resort Corp., No. 2:15-cv-00143, 2017

U.S. Dist. LEXIS 99815, at *33-34 (D. Vt. June 28, 2017) (Applying Anderson in the FMLA

context). Volvo's admission that it changed Felts's time records in contravention of its statutory

and regulatory duty to maintain those records itself is sufficient to create a jury question as to any

asserted good faith belief by the company.

19

Finally, Felts testified unequivocally during his deposition that his unexcused absences totaled between 16 and 24 hours during the relevant period. (Pl's Memo. in Opp. 10-13.) Volvo, for its part, gave shifting calculations and excuses about changing the records when pressed to articulate Felts's unexcused absence hours. (Id. at 10-13, 28-30.) Volvo's equivocal testimony, viewed in the light most favorable to Felts, corroborates his own, clear testimony regarding his absence hours. But even apart from Volvo's inconsistent statements and records, the Court on summary judgment is obligated to accept Felts's recollection of his absence hours and presume his employer was aware of the correct number. "It is an 'axiom that in ruling on a motion for summary judgment,' '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc., v. Kimberly-Clark Corporation et al., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Tolan, 134 S. Ct. at 1863).

2.      Reasonable jurors will find Felts did not violate Shop Rule 29

Volvo concedes it did not **terminate** Felts for violating Shop Rule 29. It discharged him for violating the terms of the CAP. Granting Volvo's motion with respect to Count III, the Court accepts Volvo's legitimate, non-discriminatory reason **to deny Felts backpay** based on his violation of Shop Rule 29. (Opinion, ECF 51, at 16.) The Court states: "[T]to the extent Felts contends that his misconduct should be excused because it is related to the health condition for which he required FMLA leave, his argument lacks merit." (Opinion, ECF 51, at 15-16 (internal quotation marks omitted).)

Shop Rule 29 prohibits an employee from "falsification of time records or misrepresenting yourself with information provided to the Company." (Opinion, ECF 51, at 2.) The remedy for such a violation under company policies is a disciplinary action by Volvo. Nothing in Volvo's bargaining agreement or the policies it cites permits the company to deny an employee backpay.

20

There is no allegation that Felts falsified time records. (Indeed, the party who extensively altered time records is Volvo.) Nowhere in the Opinion does the Court identify any misrepresentation Felts made with respect to his FMLA requests on June 8-9, 2015.

Volvo argues at summary judgment that Felts violated Shop Rule 29 when he requested medical leave on June 8 and 9, 2015 because those shifts followed his incarceration and court appearance. Three admissions by Volvo with respect to this precise point preclude summary judgment in its favor on Count III.

First, Felts was not  in jail or court when he was supposed to be working. As Shiffner explained to another Volvo supervisor:

> ***Dan he was not actually in jail on the two days. He was arrested one night and released at 1:30 the next day and the [sic] arraigned the following day.*** His FMLA was for anxiety, which we would argue should not be self-inflicted. The real issue is he was not terminated for this issue rather for coming into work 3 minutes late and violating his chronic attendance requirements. The sad part of this whole story is we don't know why he was ever put in the chronic attendance program, the records reflect that he only had 44 hours we don't put employees in the program with 44 hours. This was not a case we were willing to arbitrate. Sometimes we have to cut our losses, you are aware of the process.
> Jerry

(Volvo's Memo. in Support, Shiffner Decl. Exhibit B, ECF 24-5.) (emphasis added)). The jury could reasonably find this an admission by Volvo that, after conducting a comprehensive, fact-finding grievance process, management determined Felts did not violate Shop Rule 29.

Second, during Volvo's deposition taken pursuant to Rule 30(b)(6), its corporate designee, Chase Elswick, confirmed that Volvo approved Felts's requests for medical leave on June 8 and 9, 2015. (See Elswick Dep. 99-100.)  David Lilly of Volvo made the point succinctly during his deposition: "I think if I suffered from anxiety and I just got a DUI and I was either in jail or just got out, I probably would have some anxiety too." (Lilly Dep. 41.)

Third, as discussed supra, Volvo's time records show that the absences on June 8 and 9, 2015 were coded as approved FMLA leave. Even now, Volvo does not count those dates as chargeable absences. (Volvo's Memo. in Supp., ECF 24, Elswick Decl. at 6.)

Volvo  in addition is precluded by its own conduct from claiming Felts made any misrepresentation to the company based on his requests for medical leave on June 8 and 9, 2015. The FMLA affords employers extensive rights if there is a question regarding the legitimacy of an employee's need for medical leave. See 29 U.S.C. § 2613(c), (d); 29 C.F.R. § 825.307; Holder v. Ill. Dep't Corrs., 751 F.3d 486, 494 (7th Cir. 2014) (observing the employer could have "immediately ask[ed] for more proof of legitimacy" of the need for FMLA leave). The FMLA does not permit an employer to play doctor by sitting on its rights and then questioning the legitimacy of approved FMLA leave years later. Volvo never advised  Dr. Nottingham of Felts's absences on June 8-9, 2015 or otherwise questioned the treating physician about the medical need for those absences. (See Dr. Nottingham Dep. 103-04.) Volvo has an on-site medical center with a full-time physician, Dr. Kaatz, who could have assessed Felts's condition immediately upon his requests for leave on those dates. (Lilly Dep. 37; Dillon Dep. 9-10; 20.) Volvo exercised none of those employer rights and instead approved Felts's requests for medical leave on June 8 and 9. Volvo articulates no evidentiary basis to support a finding that Felts lacked a legitimate need for medical leave on those dates.

Finally, jurors could find Shop Rule 29 was not the real reason for denying Felts backpay. Volvo knew of Felts's incarceration and absences on June 8-9, 2015 before terminating him. But Volvo never disciplined Felts for the claimed infraction. (Volvo Opening Br. 8.)

Volvo has a negotiated contract with the Union (the "Common Agreement"). (See Exhibit B, Volvo 001040-41.) Article 7 of the Common Agreement provides a comprehensive disciplinary

22

procedure, including official notice to the Union steward, next-day hearings, and a provision stating that "should an investigation disclose that the employee has been improperly suspended, laid off or discharged without just cause, such employee will not be penalized for time off." (See Exhibit B, Volvo 001040-41.) The disciplinary provisions of the Common Agreement trigger the application of the grievance process when an employee contends that Volvo has taken unwarranted disciplinary action against him or her. These grievance rights are valuable to the employee. For example, by prevailing in the grievance related to his discharge, Felts achieved reinstatement.

Volvo did not engage in its contractually-prescribed disciplinary process with regard to Shop Rule 29. It neither wrote him up, nor notified his Union steward.  Volvo did not afford him the requisite next-day hearing for a terminable offense. Felts did not have an opportunity to grieve the alleged Shop Rule 29 violation. The Court's finding that Volvo had a legitimate, non-discriminatory basis to deny Felts backpay is foreclosed by Volvo's failure to engage in the procedures required by the Common Agreement. Jurors will doubt the veracity of Volvo's claimed non-discriminatory reason when it never acted upon the alleged violation by Felts during his employment.   The Shop Rule 29 allegation by Volvo is contractually precluded from qualifying as a legitimate, non-discriminatory basis for any employment action.

\* \* \*

It is not the district court's role to "weigh the evidence and determine the truth of the matter," but instead to determine whether there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 249-50. Viewing the evidence in the light most favorable to Felts, jurors could find in his favor on FMLA interference and retaliation in Count III.

23

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Reconsideration, vacate its Opinion and Order with respect to Count III, and permit all of Plaintiff's claims to proceed to the jury.

CAMERON R. FELTS


By:   s/Emma Maddux Kozlowski
                     Of Counsel

Paul G. Beers (VSB # 26725)
Email: pbeers@glennfeldmann.com
Emma Maddux Kozlowski (VSB # 85957)
Email: ekozlowski@glennfeldmann.com
Glenn, Feldmann, Darby & Goodlatte
27 Campbell Avenue, S.W.
P.O. Box 2887
Roanoke, Virginia 24001-2887
Telephone: (540) 224-8000
Facsimile: (540) 224-8050

Counsel for Cameron R. Felts

### Certificate of Service

I hereby certify that on May 31, 2018, I electronically filed the foregoing Memorandum in Support of Motion for Reconsideration with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Laura Golden Liff, Esq., Miles & Stockbridge P.C., 1751 Pinnacle Drive, Suite 1500, Tysons Corner, Virginia 22102-3833, and to Suzanne W. Decker, Esq., Miles & Stockbridge P.C., 100 Light Street, Baltimore, Maryland 21202.


s/Emma Maddux Kozlowski
Emma Maddux Kozlowski