**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

| | | |
|---|---|---|
| **CAMERON R. FELTS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.   7:17-cv-00297-EKD** |
| | ) | |
| **VOLVO GROUP NORTH AMERICA, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**VOLVO GROUP NORTH AMERICA, LLC'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Defendant, Volvo Group North America, LLC ("Volvo" or "Defendant"), by and through

its undersigned counsel, files this Memorandum of Law in Opposition to Plaintiff, Cameron R.

Felts' ("Felts") Motion for Reconsideration (ECF No. 62).

## INTRODUCTION

In his Memorandum in Support of Motion for Reconsideration (ECF No. 63) ("Felts'

Memorandum"), Felts advances a multitude of scattershot and inconsequential arguments

regarding the Court's Memorandum Opinion (ECF No. 51)—the majority of which have

absolutely no bearing on whether the Court should reconsider its ruling. Indeed, absent an

intervening change in the law, new evidence that was not previously available, or a clearly

erroneous ruling, the Court cannot grant Felts' Motion. Felts is unable to establish any of these

grounds and instead impermissibly attempts to re-litigate issues that have already been

comprehensively addressed in hundreds of pages of briefing and hours of oral argument. Because

it is axiomatic that a motion for reconsideration is not a tool with which an unsuccessful litigant

may force the court's attention to matters adequately and previously addressed, the Court should deny Felts' Motion.

## **PROCEDURAL POSTURE AND FACTUAL BACKGROUND**

On May 15, 2018, this Court granted Volvo's Motion for Summary Judgment on Count III of the Complaint, holding "Felts cannot prevail on his retaliation claim regarding Volvo's termination and post-termination action as a matter of law." (ECF No. 51 at 16.) Specifically the court held: (1) "with respect to termination, even assuming Felts can establish a *prima facie* case, he cannot prevail because he cannot establish that Volvo's reasons for terminating him were pretextual," (2) "with respect to back pay, Volvo has stated a legitimate, non-discriminatory reason for not awarding it" and (3) "Felts cannot prevail on his retaliation claims with respect to his status after Volvo rehired him." (ECF No. 51 at 15.)

In his Memorandum, Felts entirely omits any discussion of the Court's decision regarding Felts' status after Volvo rehired him. Thus the two rulings that Felts is contesting are only (1) that Felts cannot establish Volvo's reasons for terminating him were pretextual and (2) Volvo had a legitimate non-discriminatory reason for not awarding back pay. For the reasons stated below, the arguments set forth in Felts' Memorandum are unavailing, as they do not create genuine disputes of material fact that would preclude summary judgment on Count III. Rather Felts' arguments are based on facts or issues that are entirely irrelevant to the Court's ruling.

On pages 2-4 of his Memorandum, Felts advances two arguments that are classified as "Preliminary Procedural Matters." Neither of them forms a basis to reconsider the Court's grant of Summary Judgment on Count III.

2

I. **Felts' Motion for Partial Summary Judgment as to His Serious Health Condition Has Been Fully Considered and Properly Rejected By This Court**

This Court has routinely held that a motion for reconsideration that "is merely an attempt to introduce previously-available evidence, present refurbish arguments, and otherwise re-litigate summary judgment" is improper. *Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (citations omitted). Yet, on the second page of his Memorandum, Felts requests that the Court grant his Motion for Partial Summary Judgment on an element of his *prima facie case* for the **fourth time**. (*See, e,g.*, ECF No. 22 at 11-14, 22; ECF No. 29 at 15-18; ECF No. 31 at 1-2.) Felts has already dedicated **eleven pages** of briefing on this argument. Volvo has already addressed it. The court referenced it in its Memorandum Opinion. (ECF No. 51 at 3 fn1.) There is no basis for the court to reconsider its ruling under the law. *See LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12–CV–00363, 2014 WL 2121563, at *1 (E.D.Va. May 20, 2014) (Motions for reconsideration should only be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." (emphasis added) (citations omitted)). Additionally, this issue—whether the plaintiff has a serious health condition—only goes to Felts' *prima facie case*, which is inconsequential to the Court's ruling on Count III.

II. **Felts' Argument that Count III is an Interference Claim Is Improper and Erroneous**

In his Memorandum, Felts for the first time argues that Count III is actually an interference claim in addition to a retaliation claim and therefore the Court's application of the *McDonnell Douglas* burden shifting analysis to grant Volvo summary judgment on Count III is grounds to vacate the Court's Order (ECF No. 52). This argument is absurd. The mere fact that Count III incorporates by reference the allegations of Count I, which is an interference claim,

does not mean that Count III states a claim for interference.[1] Additionally, Felts' argument that Count III states an interference claim is plainly unsupported by the allegations in the Complaint.[2]

Further, Volvo argued in each of its summary judgment briefs and during oral argument that Count III was a retaliation claim only and Felts did not once raise the contention that Count III stated a claim for interference. "Courts widely agree that parties have the burden to present legal arguments in the first instance" which undermines Felts' arguments advanced for the first time on reconsideration. *Wootten*, 168 F. Supp. 3d at 895-896; *see also Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 155 (D.C. Cir. 2002) (The Court "is not *required* to unearth theories and precedents not cited by a party .... Bringing those precedents and theories to the attention of the district judge is the job of the party's attorneys."); *Mason v. Shinseki*, 25 Vet.App. 83, 95 (2011) (The "Court will not invent an argument for a represented party who had ample opportunity and resources to make that same argument, but, for whatever reason—be it strategy, oversight, or something in between—did not do so."); *Buckingham v. Am. Med. Response Ambulance Serv., Inc.*, No. 12–CV–02606–CMA–KMT, 2014 WL 349109, at *3

---

[1] If all of Felts' claims were essentially the same due to incorporation by reference then the fact that he took the effort to differentiate them into three separate counts is incredibly perplexing.

[2] Count III does not allege that Volvo interfered with Felts' rights under the FMLA. Rather, it alleges that Volvo "willfully and in bad faith violated the FMLA . . . by **retaliating** against Felts for exercising his rights under the FMLA and terminating him pretextually for appearing three minutes late and subsequently refusing to pay him back pay and benefits. . ."  (Compl. at ¶ 34.) The Complaint alleges that "Volvo **pretextually** terminated Felts for his purported violation of the Chronic Attendance Policy," which is an element of a retaliation claim—not an interference claim. (*See* Compl. at ¶ 35.) Further, Count III could not be clearer that Volvo's decision to not award Felts with back pay was part of a retaliation claim. (*See* Compl. at ¶ 36 (alleging that Volvo "**continued to retaliate** against [Felts] for his lawful exercise of his FMLA rights" and "Volvo's post-reinstatement **retaliatory adverse employment actions** included, *inter alia*, the company's (A) refusal to afford him back pay".).)

(D.Colo. Jan. 31, 2014) (concluding, on summary judgment, that the "Court is not required to make arguments on behalf of a party to litigation, especially a represented party"). Felts could have advanced this argument previously and failed to do so. It cannot serve as grounds to reconsider summary judgment on Count III.

III. **Felts' Alleged "Factual Oversights and Omissions" Are Immaterial to Whether the Court Should Reconsider Its Ruling**

The next section in Felts' Memorandum titled "Factual Oversights and Omissions" lists eight points of contention that Felts has with various factual findings in the Court's opinion. (ECF No. 63 at 4-12.) In this section Felts largely regurgitates arguments that were previously advanced on multiple occasions in his various briefs and properly rejected by the court. Most troubling is that the vast majority of these purported "oversights and omissions" have no relevance to the Court's ruling on Count III. Accordingly, Felts' "factual oversights and omissions" do not create a genuine dispute of material fact to serve as a basis to reconsider the Court's award of summary judgment on Count III.

A. **The number of unexcused absence hours required to place an employee on CAP is entirely irrelevant to the Court's rulings on termination and back pay.**

The first "factual oversight or omission" is Felts' contention that Volvo had a policy in 2015 that employees with 44 or fewer hours of unexcused absences could not be placed on a Chronic Attendance Plan ("CAP"). This purported "factual oversight" regarding Felts' *placement* on CAP does not impact the Court's analysis on whether Felts' *termination for violating the terms of CAP* was pretextual.[3] Felts was terminated due to his late arrival at work, which violated the plain language of his CAP and was grounds for immediate termination. (Pl's Dep. Tr. at

_____

[3] Felts is also wrong on the merits—the plain language of Volvo's Attendance Policy in effect in 2015 does not support his assertion that individuals with 44 or less hours cannot be placed on CAP. (*See* Elswick Decl. at 2 and Ex. 1; *see also* Lilly Decl. at 4-5; Shiffner Decl. at 5.)

160:10-15; 165:10-166:11, Ex. 15.)   Further, there is no nexus between this argument and the court's decision that Felts' Shop Rule violation was a legitimate non-discriminatory reason not to award back pay. Thus, this "factual oversight or omission" does not create a genuine dispute of material fact and is not grounds to reconsider summary judgment on Count III.

### B. Felts' notice argument only affects his *prima facie* case and is not relevant in the pretext burden shifting analysis which forms the basis of the Court's ruling on Count III.

The second "factual oversight or omission" is Felts' contention that his medical certification was not required to be submitted within 15 days of March 1, 2015.[4] Significantly, this "factual oversight or omission" is only relevant to Felts' prima *facie case*, and impacts neither whether Felts' termination for violating the terms of the CAP was pretextual nor whether Volvo's decision not to award back pay due to Felts' violation of Shop Rule 29 was legitimate. Thus, it cannot create a genuine dispute of material fact or serve as grounds to reconsider the Court's opinion.

### C. Volvo's repeated requests that Felts recertify in May and June 2015 are irrelevant to the Court's rulings on Count III.

Felts next disputes the fact that Volvo asked him to recertify in May and June 2015. Yet again, this issue is immaterial to whether Volvo's termination of Felts for arriving late in violation of the CAP was pretext for discrimination or whether Volvo had a legitimate reason for not awarding back pay. It cannot serve as a basis for the court to reconsider its ruling on Count III. Additionally, the overwhelming evidence supports that Volvo did request that Felts recertify in May and June 2015. (*See, e.g.,* Elswick Decl. at 8-9; Melton Decl. at 2-3; Dillon Decl. at 5.) The only evidence to the contrary is Felts' self-serving deposition testimony. Such unsupported testimony does not create a genuine dispute of fact and cannot preclude an award of summary

---

[4] Felts' position in his Memorandum is contradicted by his deposition testimony where he acknowledged that he knew he was required to submit his recertification paperwork within 15 days of March 1, 2015. (Pl's Dep. Tr. at 97:11-18.)

judgment. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (arguments fail to create a genuine dispute of material fact when they are unsupported by the record and amount to little more than speculative allegations.); *see also DiQuollo v. Prosperity Mortg. Corp.,* 984 F. Supp. 2d 563, 570 (E.D. Va. 2013) ("The law is well established that uncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact sufficient to defeat summary judgment.")

In a desperate attempt to connect some evidence to his self-serving testimony, Felts argues for the first time on his Motion for Reconsideration that previously available AT server record evidence supports his testimony.[5] Felts' argument that the AT server sheets cited in his Memorandum somehow corroborate Felts' deposition testimony was not asserted in any of his voluminous summary judgment briefs nor at oral argument. He is precluded from advancing it for the first time on reconsideration and the court cannot consider this new argument. *See Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.,* 402 F.Supp.2d 617, 619 (M.D.N.C. 2005) (noting that a motion for reconsideration cannot serve as an avenue for a party to "present a better and more compelling argument that the party could have presented in the original briefs.").

### D. Felts' perpetual complaints about Volvo's AT server records do not provide grounds to reconsider the Court's grant of Summary Judgment on Count III.

Felts' fourth "factual oversight or omission" is a complaint that the Court does not address alleged discrepancies in Volvo's time records and relies upon the records. Importantly, the Court ***does not*** rely upon Volvo's AT Server records when rendering its opinion on Count III. (*See* ECF

---

[5] However, the opposite is true. The AT server records clearly show where Felts was charged for absences in June and July 2015—after the requests to recertify took place in May and early June. (*See* Elswick Decl. at 7-8, Ex. E at VOLVO-000118-119, 75-79, 81-82, 167.) Additionally, the AT server printout that Volvo provided to Felts in July 2015—and that Felts produced in discovery—shows that these absences were charged after Volvo's requests for recertification were rebuffed by Felts. (*See* Felts Dep. Tr. at Ex. 6, Felts 0008-9).

No. 51 at 14-16.) Given the lack of relevance of Felts' hyperbolic argument about Volvo's AT Server records, none of Felts' complaints about any alleged discrepancies can form a basis for the court to reconsider its decision.[6]

### E. The court did not rely upon Felts' breathalyzer test results in support of its ruling that Volvo asserted a legitimate non-discriminatory basis for not awarding back pay.

Felts next complains that the Court's Opinion did not mention the results of the third breathalyzer test that was administered at the police station on June 8, 2015, when Felts was incarcerated for second offense DWI. This fact was not material and the court was under no obligation to include this specific irrelevant fact in its opinion[7]. Felts then repeats his argument from a prior brief about the inadmissibility of breathalyzer tests (*see* ECF No. 29 at 13-14, 29) that was already considered by the Court and actually argues that the Court relied upon the breathalyzer test when rendering its Opinion. Felts cannot seriously contend that the Court actually relied upon *any* of the breathalyzer results or other details about Felts' DWI charge when making its ruling on back pay when the Court expressly stated "details regarding the [DWI] charge *are **not** before this court* and *are **irrelevant** to the matter at hand*." (ECF No. 51 at 15 fn5.) Felts' frivolous argument that is directly contradicted by the express language in the Court's

---

[6] Furthermore, Felts is wrong on the merits. Felts incurred chargeable absences on June 10 and 12 as set forth in the AT server notes, which is corroborated by the AT server printout that Volvo gave to Felts in July 2015 and that Felts produced in discovery. (*See* Elswick Decl. at Ex. E; Felts Dep. Tr. at Ex. 6, Felts 0008-9). They are also corroborated by the emails of Felts' supervisors explaining that they were charging Felts for absences that were not covered by his FMLA paperwork. (*See* Melton Decl. at 2-3, Ex. A-D; Elswick Decl. at 8-9.) The fact that the codes for June and July 2015 were changed to read FMLA *after Felts was terminated* from Volvo does not somehow eviscerate the fact that he was initially charged for those absences. Felts' interpretation that he was never charged for unexcused absences in June and July 2015 is unsupported by the evidence.

[7] Felts takes issue with the Court for mentioning that the DWI charge was eventually *nolle prossed* in a footnote instead of the text of the opinion. This petty criticism certainly is not a basis to reconsider the court's ruling on Count III.

8

Opinion is an example of why motions to reconsider are so disfavored. *See, e.g., United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003). ("[I]mproper use [of motions to reconsider] can waste judicial resources and obstruct the efficient administration of justice.")

      **F.  The issue of whether Felts was terminated for late arrival to a scheduled shift or voluntary overtime shift is inconsequential to the pretext analysis.**

Felts next takes issue with the Court's word choice in its Opinion. He protests that the Court was not specific enough in describing the type of shift he was scheduled to work on September 7, 2015—the shift was a "voluntary overtime shift" and not a "scheduled shift." Whether Felts was working a scheduled shift or a voluntary overtime shift on the weekend is only relevant to the level of compensation (double time versus time and a half)—not discipline. Arriving 3 minutes late under normal progression for a voluntary overtime shift versus a scheduled shift has the same discipline—two chargeable hours. (Elswick Decl. at Ex. A.) Arriving 3 minutes late in violation of the CAP for a voluntary overtime shift, regular shift or any other kind of shift is grounds for termination. (Elswick Decl. at Ex. A, I.) The description of the shift is irrelevant and does not provide a basis to reconsider the Court's Opinion.

      **G.  The Court held that the primary reason for Volvo's decision *not to award back pay* was his Shop Rule violation.**

In his Memorandum, Felts contends that the Court wrongfully concluded that the focus of Felts' grievance was the Shop Rule violation. However, the Court did not make this conclusion in its Opinion. The Court held that the ***primary reason why Volvo decided not to award back pay*** was Felts' Shop Rule violation. (ECF No. 51 at 14-15.) The Court's conclusion regarding back pay is based on overwhelming evidence that Felts cannot rebut. (*See, e.g., id.* (citing Lilly Decl. at 4; Shiffner Decl. at 4; Elswick Decl. at 5; Lilly Ltr at 1.)). Felts argues that Exhibit A attached to his Memorandum and Shiffner's email cited on page 11 of his brief show that the primary reason

why Volvo decided not to award back pay was Felts' placement on CAP. (*See* ECF No. 63 at 11.) However, no reasonable juror would come to this conclusion as neither Exhibit A nor Shiffner's email even refers to back pay, let alone the decision to award it.

Further, motions for reconsideration "do not allow the losing party to attempt to supplement the record with previously available evidence." *Wootten,* 168 F. Supp. 3d at 894 (internal citations omitted). "That approach, of course, inverts the proper course of litigation, subjects the opposing party to repetitive and burdensome proceedings, and drains judicial resources." *Id.* (citing *United States v. Duke Energy,* 218 F.R.D. 468, 474 (M.D.N.C. 2003). Thus, the court cannot consider Exhibit A, and Felts' argument about it, as Exhibit A is previously available evidence that ***was not*** presented in Felts' summary judgment briefs or oral argument. He is precluded from introducing it for the first time on reconsideration.

### H. The presence or absence of Felts' signature on his Last Chance Agreement does not affect the court's ruling on Count III.

Volvo's legitimate non-discriminatory reason for not awarding back pay was Felts' Shop Rule violation for fraudulently calling out FMLA on June 8 and 9. Felts agreed to return to work pursuant to a Last Chance Agreement which stated that he would return to work without back pay. (Pl's Dep. Tr. at 244:15-245:5; Elswick Decl. at Ex. C.) The presence or absence of his signature on the Last Chance Agreement does not impact whether Felts agreed to abide by its terms due to his subsequent performance of the agreement.  "A signature is not required in order to bring a contract into existence, nor is a signature always necessary to the execution of a written contract." *Porter v. Gen. Boiler Casing Co., Inc.,* 284 Md. 402, 410, 396 A.2d 1090 (1979); *see also Tow v. Miners Mem'l Hosp. Ass'n,* 305 F.2d 73, 75 (4th Cir.1962) ("If a person has accepted a written agreement and has acted upon it he is bound by it, although he may not have set his hand to the document.").

However, even if it did, it would not impact the court's analysis regarding the propriety of Volvo's decision not to award back pay. Though Volvo has raised waiver as a defense in these proceedings (*see* Ans. at 6), the Court does not rely upon this defense it its Opinion awarding Volvo summary judgment on Count III. (*See* ECF No. 51 at 14-16.) This alleged factual inaccuracy is not relevant to the legal analysis at issue and should be disregarded.

## STANDARD OF REVIEW

The denial or partial grant of summary judgment is an interlocutory order, and the decision to revisit such an order is committed to the Court's discretion as part of its inherent authority. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir.2003). Under Rule 54(b) of the Federal Rules of Civil Procedure, an interlocutory order is subject to revision "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Though the court can grant motions for reconsideration under Rule 54(b), "such motions are ***disfavored*** and should be granted ***sparingly***." *Downie v. Revco Disc. Drug Ctrs., Inc.*, No. 3:05–CV–00021, 2006 WL 1171960, at *1 (W.D.Va. May 1, 2006) (emphasis added). That is because their "improper use ... can waste judicial resources and obstruct the efficient administration of justice." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C.2003). Clearly, courts could not perform their duties "satisfactorily and efficiently ... if a question once considered and decided ... were to be litigated anew in the same case upon any and every subsequent appeal." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68 (4th Cir. 1988).

Federal district courts in Virginia and the Fourth Circuit have held that a motion for reconsideration under Rule 54(b) should only be granted under the following limited circumstances: "(1) to accommodate an intervening ***change in controlling*** law; (2) to account for

11

*new evidence not available earlier*; or (3) to correct a **clear error of law** or prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12–CV–00363, 2014 WL 2121563, at *1 (E.D.Va. May 20, 2014) (emphasis added) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)). Virginia district courts have noted that "these problems rarely arise and the motion to reconsider should be equally rare." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983).

Importantly "motions for reconsideration are not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial second bite at the apple to a dissatisfied litigant. It is inappropriate where it merely reiterates previous arguments." *Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (internal citations omitted). Further a motion to reconsider is not an occasion "to present a better and more compelling argument that the party could have presented in the original briefs, or to introduce evidence that could have been addressed or presented previously." *Id.* (internal citations omitted). Aggrieved parties may not "put a finer point on their old arguments and dicker about matters decided adversely to them." *Evans v. Trinity Indus., Inc.*, No. 2:15CV314, 148 F.Supp.3d 542, 546, 2015 WL 8331944, at *3 (E.D.Va. Nov. 25, 2015). In sum, "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Duke Energy*, 218 F.R.D. at 474.

## ARGUMENT

Felts cannot meet the extremely high burden necessary to grant his Motion. At the outset, there has been no change in the controlling law on FMLA retaliation claims since the Court's May 15, 2018 Opinion. Additionally, Felts has not presented any new evidence in support of his

Motion that did not exist when the parties were briefing and arguing summary judgment. Further, Felts did not file his Motion to correct a clear error of law or prevent manifest injustice. Rather, Felts is merely a dissatisfied litigant attempting a "second bite of the apple" by crafting new legal positions which could have been advanced in his summary judgment briefs, highlighting previously available facts, and reiterating his previous arguments that were properly rejected by this Court.

I.  **Felts' Attempt to Establish Clear Error Under *Tolan v. Cotton* 134 S. Ct. 1861 (2014), Is Unavailing; The Facts In *Tolan* Are Inapposite to the Case at Bar.**

Felts' Memorandum argues that the Court's grant of summary judgment on Count III is clearly erroneous under *Tolan v. Cotton*, 134 S. Ct. 1861 (2014), wherein the Supreme Court vacated the lower court's grant of summary judgment because the lower court did not view the evidence in the light most favorable to the non-moving party. However, *Tolan* and its progeny are entirely inapposite to the case at bar because this Court *did not resolve competing inferences in favor of Volvo*. Rather, the court awarded Volvo summary judgment on Count III due to the *overwhelming evidence* in support of Volvo's legitimate non-discriminatory reason for terminating Felts and not awarding back pay and the *lack of evidence* supporting Felts' allegations of pretext.

A.  **Felts cannot establish that the Court's ruling on Count III was clearly erroneous due to the precedent set forth in *Vannoy v. Fed. Reserve Bank of Richmond*, 27 F.3d 296 (4th Cir. 2016).**

The retaliation claim in Count III in this case is analogous to the retaliation claim in *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296 (4th Cir. 2016). In *Vannoy*, the Fourth Circuit upheld the lower court's grant of summary judgment on the plaintiff's FMLA retaliation claim because the defendant "proffered overwhelming evidence that it terminated Vannoy because of his misconduct, about which there [were] no material factual disputes, and the record

contain[ed] no evidence remotely suggestive of pretext." *Id.* at 304.  As Felts remarks in his Memorandum, the pretext inquiry is ***fact intensive***. The facts in *Vannoy* are distinguishable from the facts in the cases cited on pages 15-16 of Felts' Memorandum where the courts held that summary judgment was inappropriate because the plaintiff had proffered sufficient evidence to establish a dispute of material fact regarding pretext. Because the facts in this case are analogous to those in *Vannoy* and its progeny, Felts cannot establish as a matter of law that the entry of summary judgment on Count III was clear error.

In *Vannoy*, the employer articulated a legitimate non-discriminatory reason for terminating Vannoy's employment "his misconduct in Baltimore, his failure to communicate properly about unscheduled absences, and his failure to complete the employee portion of the performance improvement plan." *Id* at 305. The court noted that "the FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior . . . even where that behavior ***is potentially tied to a medical condition***."[8] *Id.* at 304-305.

Vannoy did not dispute that "the Baltimore incident occurred, that he was absent without authorization from work numerous times in 2010, and that he failed to timely complete his obligations under the performance improvement plan." *Id.* at 305. Rather he speculated that the employer's decision to terminate was pretextual, but "made no evidentiary showing in that regard." *Id.* (citing *Dockins v. Benchmark Commc'ns,* 176 F.3d 745, 749 (4th Cir. 1999) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge.")). The Fourth Circuit held "[i]t is not our role to second-guess [the employer's] legitimate, non-discriminatory

---

[8] In Vannoy, the plaintiff suffered from severe depression, and his doctors suggested a thirty-day inpatient treatment program. The plaintiff took unscheduled absences, including during a work trip, and failed to complete a performance improvement plan. His employer terminated him, citing his unscheduled absences and insubordination.

bases for terminating Vannoy *where there is nothing in the record before us evincing retaliatory animus.*" *Id.* (*citing Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014) (explaining that we do not "sit as a kind of super-personnel department weighing the prudence of employment decisions")).

### B. Felts Cannot Establish That Volvo's Legitimate Non-Discriminatory Reason for Terminating his Employment Was Pretext for Discrimination

The Fourth Circuit's analysis in *Vannoy* is directly applicable to the facts of this case. First, with respect to Felts' termination, the Court made the following finding in support of its decision that Felts' cannot establish that Volvo's reasons for terminating him were pretextual:

> Volvo has stated a legitimate, non-discriminatory basis for terminating Felts: he showed up late for a shift, which Felts does not dispute, in violation of the CAP. Although Felts argues that this reason was pretextual, he makes no evidentiary showing in that regard.

(ECF No. 51 at 14 (internal citations and quotations omitted)). The Court's reasoning is consistent with *Vannoy*. It is undisputed that Felts violated the terms of his CAP when he arrived late to work on September 7, 2015. (Pl's Dep. Tr. at 160:10-15; 165:10-166:11, Ex. 15, 19.)  It is undisputed that Felts' late arrival was grounds for termination under the CAP and that other employees at Volvo have been terminated for violating the plain language of their CAPs, including late arrivals. (*Id.*; *see also* Elswick Decl. at 11; Shiffner Decl. at 3.) In his approximately 75 pages of briefing in summary judgment and another 25 in reconsideration, Felts still has not identified any evidence that shows that Volvo's decision to terminate him for violating the plain language of the CAP was pretextual. There is nothing in the record evincing retaliatory animus other than Felts' assertions of discrimination. In an attempt to establish some retaliatory animus, Felts contests the following finding of the Court in his Memorandum:

> Nothing in the record suggests that *those responsible for Felts's termination* knew—or had any reason to know—that the number of unexcused absence hours

were inaccurate, if indeed they were. To the contrary, Felts concedes that he did not raise the issue of his number of unexcused absence hours until after the adverse action.

(ECF No. 51 at 14 (emphasis added)). Unpacking this paragraph, the second sentence is undisputed—Felts admitted during his deposition that the first time he discussed with anyone at Volvo the contention that he had closer to 44 unexcused absence hours rather than 84 hours was not until *after he was terminated*, during the grievance process. (Pl.'s Dep. Tr. at 199:15-200:10.)

The arguments advanced in Felts' Memorandum that those responsible for Felts' termination knew or had reason to know that the number of unexcused absence hours were inaccurate, if indeed they were, is entirely without merit. Felts was terminated from employment on September 9, 2015. The person responsible for the decision to terminate Felts was Linda Zart. (Shiffner Decl. at 2; Lilly Decl. at 1.) There is not a shred of evidence in the record which shows that Linda Zart knew or had any reason to know that there was any issue regarding the number of Felts' unexcused absence hours being allegedly equal to 44 rather than 84. Indeed the earliest date in the record in which there is any discussion of this issue is not until October 29, 2015, in a letter from David Lilly to Felts' union representative. (Lilly Decl. at Ex. D.) This timeline is corroborated by Felts' deposition testimony in which he admits that he first learned of the hours issue was *during the grievance process*.  (Pl.'s Dep. Tr. at 199:15-200:10.)

In his Memorandum, Felts has not introduced a single piece of evidence that shows that Linda Zart had any reason to doubt the accuracy of the unexcused absence calculation when she terminated Felts on September 9, 2015.[9]  Felts' argument on page 18 quibbles about when David

---

[9] Volvo has introduced voluminous evidence showing that Zart's absence hours calculation when Felts was placed on CAP was correct. (*See, e.g.,* Elswick Decl. at 6-9, Ex. E, G.) Volvo's unexcused absence calculation is corroborated by the AT Server printout that Felts received in July 2015 and produced in discovery showing that he accumulated more than 70 unexcused absence hours as of that date.  (Felts Dep. Tr. at Ex. 6, Felts 0008-9).

Lilly and Gerald Shiffner became aware of the calculation issue. Lilly was not involved in the decision to terminate Felts. He made this abundantly clear during his deposition and also in his Declaration. (Lilly Decl. at 1; Lilly Dep. at 13:12-14.) Lilly did not know the underlying facts in Felts' case and somehow pulled a report showing that Felts only had closer to 44 hours on October 29, 2015. (Lilly Decl. at 2.) Shiffner relied upon Lilly's erroneous conclusion during the grievance process and he did not perform his own investigation into the propriety of the conclusion. (Shiffner Decl. at 3.) None of this matters however as the fact that Lilly and Shiffner came to a different conclusion about Felts' hours **months after Felts was terminated does not establish that Linda Zart knew or had reason to know** that there was any calculation issue with Felts' hours.[10]

Felts' argument on page 19 that Volvo allegedly violated its statutory duties by purportedly failing to preserve FMLA records has been made previously by Felts and addressed by Volvo in prior summary judgment briefs. (*See e.*g., ECF No. 29 at 10-13; ECF No. 30 at 13-17.) It is wrong on the merits—Volvo preserved all FMLA records required by law. (*See* ECF No. 30 at 13-17.) This tired argument is incorrect, entirely irrelevant to the issue of Linda Zart's knowledge, and cannot form the basis to reconsider the Court's ruling. *LaFleur v. Dollar Tree Stores*, Inc., No. 2:12–CV–00363, 2014 WL 2121563, at *1 (E.D.Va. May 20, 2014)(holding that

---

[10] Felts makes a flagrant misrepresentation on page 18 of his Memorandum that Volvo's supervisors became aware of the error by Volvo's counsel. Chase Elswick testified during deposition and in his Declaration that he performed his unexcused absence calculation before Volvo's counsel was retained. (Elswick Dep. Tr. at 21:16-22:2; Elswick Decl. at 6-9; *see also* Shiffner Decl. at Ex. C, Volvo's Supp. Response to Pl's 3rd Rogs.) The David Lilly quote on pages 18 and 19 of Felts' Memorandum only shows that Lilly became aware of the calculation by speaking with Elswick, counsel and others at Volvo. He does not say that he first became aware of the issue by Volvo's counsel.

when "the Court already considered the record evidence"  the moving party "cannot use a motion for reconsideration to relitigate matters that have already been before the court.")

Felts' final argument about his belief about his absence hours calculation is similarly unavailing. (ECF No. 63 at 20.) Felts testified that he did not learn about the issue of his absence calculation being as low as 44 hours until his during his grievance negotiations, which commenced in October 2015. (Pl.'s Dep. Tr. at 199:15-200:10.) As of December 28, 2017, in response to Volvo's interrogatories, Felts stated that he incurred 44 hours of unexcused absences. (Pl's Ans. to Interrog Nos. 7-8.) On March 6, 2018, he testified during deposition *for the first time* that he now believes the calculation was much lower, between 16-24 hours after having filed this litigation and having the benefit of reviewing Volvo's records in discovery. (*See* Pl's Dep. Tr. at 196: 12-19.) Viewing the evidence in the light most favorable to Felts, it does not change the analysis of what Linda Zart knew when Felts was terminated, *three years earlier*, on September 9, 2015.

Based on the foregoing, Felts cannot establish that Volvo's reason for terminating his employment is pretext for discrimination. The Court' ruling is not clearly erroneous and there are no grounds to reconsider summary judgment on Count III.

### C. Felts Cannot Establish That Volvo's Legitimate Non-Discriminatory Reason for Not Awarding Back Pay Was Pretext For Discrimination

The Court made the following finding in support of its decision that Volvo had a legitimate non-discriminatory reason for not awarding Felts back pay: "Volvo has proffered overwhelming evidence that it chose not to award back pay because of the Shop Rule violation, about which there are no material factual disputes, and Felts has pointed to no evidence whatsoever that would suggest pretext as to this decision." (ECF No. 51 at 16). In his Memorandum, Felts does nothing to combat the overwhelming testimony and evidence produced

by Volvo showing that the labor relations representatives and union representatives' primary reason for not awarding back pay was Felts' Shop Rule violation. (*See, e.g.,* Lilly Decl. at 2-4, Ex. B, C, D; Shiffner Decl. at 4, Elswick Decl. at 5.) Instead, Felts makes several disjointed arguments in an attempt to establish clear error on the Court's ruling regarding Volvo's decision not to award back pay. They can be classified into three categories—none of which impact the Court's ruling on Count III.

The first category are arguments which claim that if there is evidence in the record showing that anyone at Volvo thought that Felts may have experienced some anxiety on June 8 or 9 in connection with his arrest, incarceration and arraignment, then Volvo cannot prove that Felts violated Shop Rule 29. This argument is erroneous as a matter of black letter law and should be rejected by this Court. *See, e.g. Vannoy,* 827 F.3d at 304-305 ("the FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior" "even where that behavior ***is potentially tied to a medical condition***."); *Peaslee v. Citizens Conservation Corps, Inc.,* 5:16-CV-11133, 2018 WL 296004 at *5 (S.D.W. Va. Jan. 4, 2018) (granting employer summary judgment on retaliation claim and holding that though "[b]oth the insubordination and the decline in performance ***may have been related to his PTSD***" in order to survive summary judgment the employee had to "produce evidence that his termination was motivated by retaliatory animus due to his attempt to exercise his FMLA rights, rather than due to his performance and insubordination."); *Gonzalez v. Faithful+Gould, Inc.,* 1:17CV624, 2017 WL 6559905 at *5 (E.D. Va. Dec. 22, 2017) ("Plaintiff's argument that his misconduct ***should be excused because he suffers from a disability and his conclusory allegations that the decision to terminate him was discriminatory*** do not establish a genuine dispute of material fact as to pretext and summary judgment in favor of defendant must be granted.")

The second category are contrived contract interpretation arguments raised for the first time on reconsideration that cannot be considered by this Court as a matter of law. Felts makes an argument on page 20 of his Memorandum that "nothing in Volvo's bargaining agreement or policies it cites permits the company to deny an employee back pay" for violating Shop Rule 29 and therefore no reasonable juror could conclude that Volvo's reason for not awarding back pay was Felts' Shop Rule violation.[11] He also makes a ridiculous argument on pages 22-23 that if Volvo did not follow certain disciplinary procedures outlined in the Common Agreement, no reasonable juror could conclude that Felts violated Shop Rule 29.[12] Both of these arguments are entirely without merit. First, there is absolutely no bar under the collective bargaining agreement or any of Volvo's policies to reinstating someone without back pay when they have violated Shop Rule 29. Second, any technical inconsistency between Volvo's disciplinary actions with respect to Felts' Shop Rule violation and the letter of the common agreement does not mean that no violation occurred. Felts' argument that jurors would conclude otherwise is nonsensical.

Significantly, the court need not reach the merits of Felts' contract interpretation arguments as it cannot consider legal arguments on previously litigated issues that Felts could have presented on summary judgment but did not. *See Wootten,* 168 F. Supp. 3d at 896 ("It is not

---

[11] This argument is made without any citation to the record and should be rejected on the merits. Volvo's Shop Rules state that a violation of Shop Rule 29 is a terminable offense. (Elswick Decl. at Ex. B.) As part of the collective bargaining agreement, an employee who is terminated has the right to grieve said termination. If the company decides to reinstate the employee, it may decide to do so with or without back pay depending on the factual circumstances.(*See, e.g.,* Elswick Decl. at 5, Shiffner Decl. at 3-4; Lilly Decl. at 1-4, Ex. B, C.)

[12] This argument is also wrong on the merits. Volvo did make a record of the violation in Felts' file (*see* Shiffner Decl. at Ex. A), Felts had his union steward represent him in connection with the violation during the grievance process wherein he grieved the violation and it was agreed upon that the consequence would be that Volvo would not award back pay. (*See, e.g.,* Elswick Decl. at 5, Shiffner Decl. at 3-4; Lilly Decl. at 1-4, Ex. B, C.)

20

a basis to undo and redo summary judgment simply because a litigant may feel that his original briefs did not put his best foot forward."); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 n. 7 (1st Cir. 1991) ("Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion."); *Int'l Ctr. For Tech. Assessment v. Thompson*, 421 F.Supp.2d 1, 10 (D.D.C 2006) ("This court's decisions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.") (internal citations omitted).

Additionally, Felts is not even permitted to rely upon the Common Agreement, attached as Exhibit B, as evidence in support of his second contract interpretation argument because motions for reconsideration "do not allow the losing party to attempt to supplement the record with previously available evidence." *Wootten,* 168 F. Supp. 3d at 894. (internal citations omitted). "That approach, of course, inverts the proper course of litigation, subjects the opposing party to repetitive and burdensome proceedings, and drains judicial resources." *Id.* (citing *Duke Energy*, 218 F.R.D. at 474). Felts could have cited to the Common Agreement in his voluminous summary judgment briefing. He chose not to do so and he is precluding from doing so now.

The final category of arguments in Felts' Memorandum contend that no reasonable juror could conclude that a Shop Rule violation occurred because of the way Felts' absences were coded in AT Server on June 8 and 9, 2015.[13] Volvo initially coded the absences on the 8th and 9th as FMLA due to Felts' misrepresentation, which was not uncovered until right before he was terminated in September 2015 and long after his placement on CAP on July 15, 2015. (*See*

---

[13] Felts also incorrectly contends that there is "no allegation that Felts falsified time records" in the Opinion and that the Opinion "does not identify any misrepresentation Felts made with respect to his FMLA request on June 8 and 9." The misrepresentation is identified on page 14 of the Opinion: "On June 8-9, 2015, Felts called in for FMLA leave when the undisputed facts show that he had been in jail and attended a court appearance for a DWI charge."

Shiffner Decl. at 2.) The simple reason for Volvo's failure to include the 8th and 9th in its unexcused absence calculation set forth in the Elswick Declaration is Volvo was not aware of the Shop Rule violation when Felts was placed on CAP and the calculation is based on Felts' unexcused absence hours as of that date. (Elswick Decl. at 6-9.) Volvo's discovery responses make clear that the absences were chargeable. (Shiffner Decl. at Ex. C.) In any event, and more importantly, this argument has no impact on the Court's analysis regarding Volvo's decision not to award back pay and should be rejected for that reason alone.

Based on the foregoing, Felts cannot establish that Volvo's reason for not awarding back pay is pretext for discrimination. The Court' ruling is not clearly erroneous and there are no grounds to reconsider summary judgment on Count III.

## CONCLUSION

For the foregoing reasons, Defendant, Volvo Group North America, LLC respectfully requests that this Honorable Court deny Plaintiff's Motion for Reconsideration in its entirety.

Dated:   June 14, 2018                                    Respectfully submitted,


**VOLVO GROUP NORTH AMERICA, LLC**
**By Counsel**


**MILES & STOCKBRIDGE P.C.**


*/s/ Laura Golden Liff*                    
Suzanne W. Decker  (VSB No. 36082)
Laura Golden Liff  (VSB No. 80618)
1751 Pinnacle Drive, Suite 1500
Tysons Corner, Virginia 22102-3833
Phone:  703-903-9000
Fax:  703-610-8686
sdecker@milesstockbridge.com
lliff@milesstockbridge.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of June, 2018, a copy of the foregoing was

electronically filed with the Court and served via the Court's ECF filing system on the following:

Paul Graham Beers, Esq.
Emma Maddux Kozlowski, Esq.
**Glenn Feldmann Darby & Goodlatte**
37 Campbell Avenue, S.W.
Roanoke, Virginia 24011
PBeers@glennfeldmann.com
ekozlowski@glennfeldmann.com
*Counsel for Plaintiff*

*/s/ Laura Golden Liff*
Laura Golden Liff

4814-5866-4297, v. 1